**In re the REGENTS of the UNIVERSITY OF CALIFORNIA, Petitioner,**

**Misc. No. 330.**

United States Court of Appeals, Federal Circuit.

May 18, 1992.

Gerald P. Dodson of Townsend & Townsend, Thomas D. Nevins of Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for petitioner.

Donald R. Dunner of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for respondent, Eli Lilly & Co. Of counsel were Charles E. Lipsey and Susan Haberman Griffen.

Salem M. Katsh of Weil Gotshal & Manges, New York, N.Y., for respondent, Genetech, Inc. Of counsel were Ira M. Millstein, Howard B. Comet, David K. Barr, and Christina Del Valle.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

The Regents of the University of California petition for extraordinary writ, ordering the Judicial Panel on Multidistrict Litigation to vacate its order consolidating five pending lawsuits for coordinated pretrial proceedings in the Southern District of Indiana.[1] The petition is opposed by Genentech, Inc. and Eli Lilly and Co. Alternatively, the Regents request that the coordinated pretrial proceedings be conducted in the Northern District of California; Genentech supports this request, and Lilly opposes it.

**I**

Genentech and Lilly challenge the Federal Circuit's jurisdiction to entertain this mandamus petition, and request dismissal or transfer to the Seventh Circuit Court of Appeals. Genentech and Lilly state that this court does not have jurisdiction under 28 U.S.C. § 1651[2] to review transfer orders

---

1. *In re Recombinant DNA Technology Patent and Contract Litigation,* Docket No. 912 (J.P.M.L. February 19, 1992).

2. **28 U.S.C. § 1651 Writs**
 (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

generally; and that even if jurisdiction were to exist under § 1651, review of Multidistrict Panel transfer orders is limited by 28 U.S.C. § 1407(e) [3] to the geographic circuit courts of appeal.

■ The Federal Circuit's authority in extraordinary writ is beyond challenge. When a petition is brought in connection with a case in the Federal Circuit's appellate jurisdiction, this court has conscientiously administered its responsibility. *E.g.*, *In re Newman*, 782 F.2d 971, 973, 228 USPQ 450, 452 (Fed.Cir.1986) ("Because this court, and only this court, has jurisdiction over any appeal from a final decision in this case, it has jurisdiction to hear and decide this [mandamus] petition.") The Federal Circuit has considered questions of venue when properly raised. *E.g.*, *Exxon Chemical Patents, Inc. v. The Lubrizol Corp.*, 935 F.2d 1263, 19 USPQ2d 1061 (Fed.Cir.1991); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 16 USPQ2d 1614 (Fed.Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 12 USPQ2d 1997 (Fed.Cir.1989). Such issues, properly before the Federal Circuit on appeal, are no less within our jurisdiction when raised by extraordinary writ, *e.g.*, *In re Cordis Corp.*, 769 F.2d 733, 226 USPQ 784 (Fed.Cir.1985).

■ Genentech and Lilly assert that whether or not the Federal Circuit may exercise jurisdiction under § 1651, it does not have "jurisdiction over the transferee district", quoting § 1407(e), a statutory prescription that Genentech and Lilly say applies only to the geographic circuit courts. This misconstrues the statute, for the distinction drawn in § 1407(e) is between the transferee and the transferor district. With the formation of the Federal Circuit and its statutory assignment as exclusive appellate tribunal in patent cases, see 28 U.S.C. § 1295, this court acquired

the authority of § 1651 and the responsibility of § 1407(e). The text of § 1407(e), enacted in 1968, readily accommodates the establishment of this court in 1982.

Lilly cites *Wood v. United States*, 961 F.2d 195 (Fed.Cir.1992) in support of its position. The citation is inapt. The court in *Wood* discussed two transfers: (1) the transfer of a Federal Tort Claims Act case from the Northern District of California to the Southern District of Florida; the Federal Circuit held that it was without jurisdiction to review this transfer, since a final judgment in an action under the Federal Tort Claims Act is not appealable to the Federal Circuit; and (2) the subsequent transfer of the case from the Southern District of Florida to the Claims Court on the basis that it did not sound in tort, but was based upon a contract and jurisdiction lay only under the Tucker Act; this transfer was reviewed by the Federal Circuit under 28 U.S.C. § 1292(d)(4)(A). The jurisdiction conferred by § 1292(d)(4)(A) was held not to authorize review of the prior transfer from California to Florida, for at the time of that transfer jurisdiction was based solely on the Federal Tort Claims Act. *Wood* does not hold that only the geographic courts of appeal can review transfer orders in cases over which this court has exclusive appellate jurisdiction. Indeed, *Wood* supports the contrary position.

The Federal Circuit's jurisdiction over this petition is in accordance with 28 U.S.C. §§ 1295, 1407, and 1651. The request to dismiss or transfer the petition for lack of jurisdiction is DENIED.

## II

These five lawsuits arose out of various research arrangements involving the Regents, Genentech, and Lilly, and relate to recombinant DNA technology and its use in the production of human insulin and human growth hormone (hGH).

---

**3. 28 U.S.C. § 1407 Multidistrict litigation**

(e) No proceedings for review of any order of the panel may be permitted except by extraordinary writ pursuant to the provisions of title 28, section 1651, United States Code.... Petitions for an extraordinary writ to review an order to transfer ... shall be filed only in the court of appeals having jurisdiction over the transferee district.

Two suits are pending in the Northern District of California:

(1) *Regents v. Genentech and Lilly*, No. C90–2232. The Regents allege that Genentech's production of recombinant DNA hGH products infringes the university's '877 patent entitled "Recombinant DNA Transfer Vectors". Genentech had added Lilly, the exclusive licensee under the '877 patent, to this action.

(2) *Regents v. Lilly*, No. C90–0373. The Regents allege that Lilly's production of recombinant DNA human insulin products infringes certain patents owned by the university.

Three suits are pending in the Southern District of Indiana:

(3) *Lilly v. Genentech*, No. 87–219–C. Lilly seeks a declaratory judgment that four patents owned by Genentech are either invalid or not infringed by Lilly's production of recombinant DNA hGH products. Genentech has counterclaimed for infringement of thirteen patents.

(4) *Genentech v. Lilly*, No. 88–1463–C. Genentech charges Lilly with breach of contract, misappropriation of trade secrets, and related wrongs, based on Lilly's alleged use, in production of hGH, of technology licensed solely for use in production of insulin. Lilly's offset claims are based on agreements between Lilly and the Regents in which Lilly funded research at the university. Issues arise from the movement of scientists from the university to Genentech, bringing with them Lilly–funded materials.

(5) *Genentech v. Lilly and Regents*, No. 90–1679–C. Genentech seeks a declaration that the Regents' '877 patent is invalid, unenforceable, or not infringed by Genentech's production of recombinant DNA hGH products. Genentech also charges the Regents and Lilly with antitrust and state law violations.

Genentech moved the Panel on Multidistrict Litigation to establish coordinated pretrial proceedings in these five actions in the Northern District of California. After briefing and argument the Panel granted Genentech's request for coordination, but ordered that the coordinated proceedings be conducted by the court in the Southern District of Indiana. This petition ensued.

28 U.S.C. § 1407(a) authorizes the Panel on Multidistrict Litigation to transfer to any district court, for coordinated or consolidated pretrial proceedings, civil actions pending in more than one district and involving one or more common questions of fact. The Panel must determine that coordinated pretrial proceedings "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C § 1407(a). The purpose of this statute is the avoidance of conflicting and duplicative pretrial demands on parties and witnesses in related cases. *See* H.R.Rep. No. 1130, 90th Cong., 2nd Sess.(1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1899–1900; *In re Plumbing Fixture Cases*, 298 F.Supp. 484, 490–92 (J.P.M.L.1968). The Regents do not dispute the legitimacy of this purpose, but argue that in this case the transfer is unauthorized, improper, and inefficient.

█ The Regents state that since the Indiana and California district courts have already considered and decided transfer and venue questions in these cases, their decisions are the law of the case and can not be overruled by the Multidistrict Panel. The Regents argue that the Multidistrict Panel's order is contrary to five district court decisions, and that the Panel abused its discretion in failing to defer to these decisions as the law of the case.

We need not consider the broader aspects of applicability of the doctrine of law of the case in multidistrict litigation, *see In re Multi–Piece Rim Products Liability Litigation*, 653 F.2d 671, 678 (D.C.Cir. 1981), for review of the five decisions to which the Regents refer shows that none of the decisions treated the question that was before the Multidistrict Panel. Following is a summary of these decisions:

(1) The decision of Judge McKinney of the Southern District of Indiana in No. 90–1679–C, dismissing the Regents from *Genentech v. Lilly and Regents*.

The declaratory judgment action filed by Genentech in Indiana was dismissed in view of the infringement action filed in

California one day later by the Regents. Dismissal was based both on discretionary grounds and reliance on the Eleventh Amendment. This dismissal was appealed to the Federal Circuit, and is *sub judice.*

The Regents characterize this decision as holding that the Northern District of California is the correct venue for determination of the infringement issue. We do not share this characterization, for this decision did not address the issue of choice of venue. The court simply declined to exercise jurisdiction over a declaratory judgment action brought under these circumstances. The court also relied, as an alternative ground, on the Eleventh Amendment.

The Indiana court did not consider the larger picture raised by the existence of five actions, that is, whether pretrial coordination among all of the actions might achieve desirable economies and efficiencies.

(2) The decision of Judge Dillin of the Southern District of Indiana in No. 90–171–C, dismissing the declaratory judgment action brought by Lilly against the Regents.

This declaratory judgment action was also dismissed in favor of the infringement action filed in California by the Regents against Lilly. As in case (1), there was no discussion of issues relating to pretrial coordination. Insofar as the record shows, the issues under § 1407(a) that were before the Multidistrict Panel were not decided in the Southern District of Indiana, either explicitly or implicitly.

No theory of law of the case or other estoppel against the Multidistrict Panel has been shown to be supported by these Indiana decisions.

(3) The decision of Judge Weigel of the Northern District of California, No. C90–0373, denying Lilly's motion to dismiss or transfer *Regents v. Lilly* to Indiana.

Lilly had challenged venue in California on the basis of *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), which held that for purposes of 28 U.S.C. § 1400(b) a corporation resides only in its place of in-corporation. Judge Weigel held that amendments to 28 U.S.C. § 1391(c) made a corporate defendant subject to patent infringement suit in any judicial district in which it is subject to personal jurisdiction. *Regents v. Lilly,* 734 F.Supp. 911, 14 U.S.P.Q.2d 1909 (N.D.Cal.1990). The Federal Circuit has also adopted this interpretation of the amended venue statutes. *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 16 U.S.P.Q.2d 1614 (Fed.Cir.1990).

This decision held that venue in the Regents' infringement suit against Lilly was permissible in the Northern District of California; it did not hold that such venue was mandatory for all purposes, or that pretrial coordination in Indiana was barred.

(4) The decision of Judge Jensen of the Northern District of California in *Regents v. Lilly,* No. C90–0373, denying Lilly's motion to join Genentech as a necessary party.

Lilly had sought to bring into this California action a patent interference counterclaim involving a patent owned by Genentech. The Regents challenged Lilly's standing to assert such a counterclaim, and also asserted that in any event this counterclaim was barred by the Eleventh Amendment. The district court denied the joinder of Genentech. *Regents v. Lilly,* 777 F.Supp. 779, 19 U.S.P.Q.2d 1668 (N.D.Cal.1991).

The Regents argue that the district court's ruling established the absence of a relationship with Genentech as to this action. Lilly counters, and Regents does not seriously dispute, that this ruling was quite narrowly drawn, and did not reach the questions of commonality of facts, witnesses, and parties pertinent to coordinated pretrial proceedings.

(5) The decision of Judge Jensen in Nos. C90–2232 and C90–0373 denying Genentech's motion to transfer *Regents v. Genentech and Lilly* to the Southern District of Indiana, and denying Lilly's motion to relate the two California actions.

In denying Genentech's motion to transfer under 28 U.S.C. § 1404(a),[4] the California district court observed that consolidation of all the cases for trial in Indiana was unlikely because they did not involve the same patents or claims of infringement, and because the Regents had requested a jury while the Indiana actions were being tried to a special master. *Regents v. Lilly*, 21 U.S.P.Q.2d 1201, 1207–08 (N.D.Cal. 1991). The California court was not persuaded that Indiana was a more convenient forum for trial of this case since Genentech, the Regents, and many witnesses were located in California; since California law governs the contracts and trade secret agreements involved; and since *Regents v. Lilly*, which involves some of the same facts, would be tried in California. In declining the requested change of venue the Court did not hold that the California and the Indiana actions involved no common facts, parties, or witnesses.

The denial of a motion to transfer under § 1404(a) does not bar coordination of pretrial procedures under § 1407. *See In re Air Crash Disaster at Toronto International Airport on July 5, 1970*, 346 F.Supp. 533 (J.P.M.L.1972) (granting transfer under § 1407 despite previous denial of a § 1404(a) transfer); *In re Aviation Products Liability Litigation*, 347 F.Supp. 1401, 1404 (J.P.M.L.1972) ("venue is not a criterion in deciding the propriety of transfer under Section 1407"). The considerations pertinent to a change of venue under § 1404(a) are not the same as those pertinent to coordination of pretrial proceedings in multiple cases involving common parties. *In re American Financial Corp. Litigation*, 434 F.Supp. 1232, 1234 (J.P.M.L.1977). Congressional intent is in accord. H.R.Rep. No. 1130, 90th Cong., 2nd Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900.

The California district court had also considered Lilly's motion to relate the two California actions, *Regents v. Lilly* and *Regents v. Genentech and Lilly*, for trial before the same judge, in accordance with California Local Rule 205–2. The court held that the common elements of the two cases were insufficient to "relate" the actions, but that they were nevertheless sufficient to cause inconsistent and duplicative pretrial demands on parties and witnesses, such problems having already been encountered. *Regents v. Lilly*, 21 U.S.P.Q.2d at 1208. Accordingly, the court ordered that discovery in these California actions would be handled by the same magistrate.

However, the court did not reach the question of whether discovery in the California actions should also be coordinated with discovery in the Indiana actions. While the court considered it unlikely that all these actions could or should be consolidated for trial, and declined to transfer the California action to Indiana for that purpose, it did not rule on whether they could or should be coordinated for pretrial proceedings.

The Regents express concern that Genentech and Lilly, upon pretrial coordination in Indiana under § 1407, will attempt to reopen various matters that were already decided in California—thereby getting an undeserved second bite. The Regents also express concern that Genentech and Lilly will maneuver to try the merits of the California actions in Indiana, for example by filing motions for summary judgment, thus defeating the Regents' expectation and entitlement that the merits of the California actions will be tried in California. These possibilities can not be evaluated in the abstract, and are not sufficient ground for reversing the § 1407 order of the Multidistrict Panel.

We conclude that principles of law of the case do not bar pretrial coordination of these five cases in accordance with § 1407, and transfer of the California cases to Indiana for this purpose.

### III

The Regents state that the Multidistrict Panel is barred by the Eleventh Amend-

---

**4. 28 U.S.C. § 1404 change of venue**
 (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

ment from ordering pretrial coordination outside of the California forum. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Regents have been described as an instrumentality of the State of California, *BV Engineering v. University of California, Los Angeles,* 858 F.2d 1394, 1395, 8 USPQ2d 1421, 1422 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 859 (1989).

In *Ex parte State of New York,* 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921), the Supreme Court explained that the federal courts do not have authority to entertain a suit brought by private parties against one of the United States, without the State's consent. The Eleventh Amendment thus embodies principles of sovereign immunity, *Welch v. Texas Dep't of Highways & Public Transp.,* 483 U.S. 468, 486, 107 S.Ct. 2941, 2952, 97 L.Ed.2d 389 (1987), implementing the principles of federalism underlying the Constitutional plan. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).

### A

■ The Regents argue that the Multidistrict Panel's order forces their participation in litigation to which they have not consented. This argument misperceives the nature of the transfer order. The order simply coordinates in one court, before one judge, the pretrial procedures of existing actions; it does not require the Regents to appear in actions to which they are not party, or to defend against claims to which they are not otherwise subject. The coordination of pretrial activities in pending proceedings, for the purpose of avoiding inconsistent and duplicative demands on parties, witnesses, and judges, neither enlarges the State's liability nor invokes federal judicial

power beyond that already sought by the State.

As discussed in *In re Aviation Products Liability Litigation,* 347 F.Supp. 1401, 1403–04 (J.P.M.D.L.1972), the transferee court is expected to tailor the pretrial program to fit the issues and parties, and to avoid subjecting any party to unrelated discovery or other procedures. The transferee court may cause pretrial proceedings on issues unique to a particular action to proceed on separate tracks concurrently with common pretrial proceedings, and has the power to provide that no party need participate in proceedings unrelated to that party's interests. *In re Cuisinart Food Processor Antitrust Litigation,* 506 F.Supp. 651, 655 (J.P.M.L.1981). The Panel's transfer order provides that the pretrial program in the Southern District of Indiana may allow discovery with respect to non-common issues to proceed concurrently with discovery on common issues. In response to the Regent's argument that an early trial is expected in the California actions, the Panel recognized: "It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded in advance of the other actions".

We conclude that the Panel's order does not force unconsented suit upon the Regents, but simply coordinates pretrial proceedings, in the interest of efficiency.

### B

■ The Regents also state that they limited their waiver of immunity to the venue of the Northern District of California, and that transfer of even part of the actions they brought in California, for any purpose, is barred by the Eleventh Amendment.

The Eleventh Amendment is not designed to give procedural advantage to State litigants, but to shield States from unconsented actions against them. Although the Regents rely on *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990):

[I]ssues of venue are closely related to those concerning sovereign immunity, as this Court has indicated by emphasizing that "[a] State's constitutional immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Port Authority*, 495 U.S. at 307, 110 S.Ct. at 1873 (quoting *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907), this reliance is inapt, for the two suits filed by the Regents in California are not "suit[s] ... commenced or prosecuted against one of the United States", the words of the Eleventh Amendment. *See United States v. Peters*, 9 U.S. (5 Cranch) 115, 139, 3 L.Ed. 53 (1809) (Marshall, J.) (the right of a state to bring suit in federal courts is not affected by the Amendment; the Amendment simply provides that no suit shall be commenced or prosecuted against a state).

On filing these suits in the federal courts in California, the Regents requested adjudication of the claims that the State put before the court. *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883). Upon entering the litigation arena the Regents, like all litigants, become subject to the Federal Rules, including the procedural efficiencies administered by the Multidistrict Panel. Having invoked the jurisdiction of the federal court, the state accepted the authority of the court. *See State of Iowa v. Union Asphalt & Roadoils, Inc.*, 409 F.2d 1239, 1244 (8th Cir. 1969).

We discern no principle of state sovereign immunity slighted by the Multidistrict Panel's order. Principles of federalism are not compromised by this result. Having sought the aid of the courts, the Regents became subject to coordinated pretrial proceedings under § 1407. While judicial efficiency can not override the Constitution, the coordination of pretrial procedures by a court, selected by a Panel constituted for this purpose, does not impinge upon the State's sovereign immunity.

## IV

Having determined that this court has jurisdiction of this petition, that law of case is not implicated, and that the Eleventh Amendment does not bar the § 1407 procedure, we reach the merits of the Regents' petition for writ of mandamus.

 Orders whose review is by extraordinary writ may be overturned only when there has been a clear abuse of discretion or usurpation of judicial authority. *See Bankers Life and Casualty Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). The petitioner has the burden of establishing that its right to issuance of the writ is "clear and indisputable". *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967); *In re Innotron Diagnostics*, 800 F.2d 1077, 1086, 231 USPQ 178, 185 (Fed.Cir.1986).

 The Regents argue that consolidation for pretrial proceedings should not be automatically ordered, but that all the circumstances of these five cases should be considered, including the present posture of each of the cases, their state of advancement toward trial, and the degrees of overlap and separateness of the issues. We agree that these considerations are pertinent; but they must be considered on the appropriate standard.

An order of coordination under § 1407 requires the presence of sufficient common questions of fact to promote just and efficient conduct of multiple actions by eliminating the potential for conflicting pretrial rulings by coordinate courts. The Multidistrict Panel was presented with evidence of overlap of documents and witnesses in the five actions. Although the Regents dispute the extent and significance of the overlap, there was evidence and argument that *Regents v. Genentech* (California) and *Genentech v. Lilly and Regents* (Indiana) involve at least some of the same issues of fact and law. *Regents v. Lilly* (California) is described as involving commercial activities of Lilly in producing human insulin using, in part, technology transferred to it by Genentech—this technology transfer partly underlies *Genentech v. Lilly* (Indiana). The agreements between the Regents and Lilly are involved in *Regents v. Lilly* (California), *Genentech v. Lilly*

(Indiana), *Regents v. Genentech* (California), and *Genentech v. Lilly and Regents* (Indiana). A settlement agreement between the Regents and Genentech appears to be pertinent to *Regents v. Lilly* (California) and *Genentech v. Lilly* (Indiana). Various Genentech patents involved in *Lilly v. Genentech* (Indiana) are said to be asserted as invalidating prior art in *Regents v. Lilly* (California), *Regents v. Genentech* (California), and *Genentech v. Lilly and Regents* (Indiana). Depositions of witnesses of all three entities are said to be pertinent to all five actions. At least thirty-five deposition witnesses that are said to be likely to be common to all five actions have been identified.

All of this, including argument as to the correctness or significance of representations of the three parties on these aspects, was before the Multidistrict Panel. The Panel was also advised of a complicated history involving certain protected documents, whereby there have already occurred duplicative rulings, multiple motions, and vacations of protective orders previously issued. Indeed, the holding of the California magistrate that certain relief requested for protected documents must be sought in Indiana weighs on the side of the Panel's order.

On review of the arguments and information provided us, we conclude that there was sufficient basis for the Multidistrict Panel's ruling that coordinated pretrial proceedings would best serve the objectives of 28 U.S.C. § 1407. The Panel's Order coordinating pretrial procedures was neither a clear abuse of discretion nor usurpation of judicial authority, nor contrary to law.

### V

The Regents and Genentech join in arguing that if the Panel's coordination order is sustained, the Northern District of California, not the Southern District of Indiana, is the appropriate forum for the coordinated proceedings. They point out that two of the three parties are in California, and that the Northern District of California has the less congested docket. *See In re Peruvian Road Litigation,* 380 F.Supp. 796, 798 (J.P.M.L.1974) (condition of court's docket is relevant factor in selection of transferee forum).

■ The Multidistrict Panel, recognizing that either district could be appropriate, concluded that the Southern District of Indiana was the better choice. The reasons were that the broader-based of these actions, as well as the earliest filed, were already in the Indiana court; that the Indiana court had developed more familiarity with the issues; that Indiana is a centrally located forum for witnesses located throughout the world and for counsel located on both coasts of the United States; and that many relevant documents and witnesses are at Lilly's headquarters in the Indiana district. These all are relevant factors. *See In re Republic National–Realty Equities Securities Litigation,* 382 F.Supp. 1403, 1406 (J.P.M.L.1974) (relevant to consider which district has a significant number of the underlying cases pending before it); *In re Plywood Antitrust Litigation,* 376 F.Supp. 1405, 1407 (J.P.M.L. 1974) (relevant to consider familiarity of the judges with the issues); *In re Air Crash Disaster Near Coolidge, Arizona on May 6, 1971,* 362 F.Supp. 572, 573 (J.P.M.L.1973) (relevant to consider location of documents and witnesses); *In re Wheat Farmers Antitrust Class Action Litigation,* 366 F.Supp. 1087, 1088 (J.P.M.L.1973) (centrality of location a factor in choice of transferee forum). Lilly is the only party common to all five actions. *See In re Aviation Products,* 347 F.Supp. at 1404.

Although reasonable arguments have been made for both fora, the Regents and Genentech have not established that the Panel exceeded its discretionary authority in its selection of the Southern District of Indiana, and have not shown a clear and indisputable right to selection of the Northern District of California as transferee forum.

ACCORDINGLY, IT IS ORDERED THAT:

The Regents' petition for writ of mandamus, ordering the Multidistrict Panel to vacate its order issued in accordance with

§ 1407, or alternatively to transfer the Indiana actions to the Northern District of California for coordinated pretrial proceedings, is DENIED.