Entry Granting UC’s Motion to Dismiss for Lack of Jurisdiction Based on the Eleventh Amendment
 

 DILLIN, District Judge.
 

 This cause comes before the Court on UC’s motion to dismiss for lack of jurisdiction based on the Eleventh Amendment. For the following reasons, UC’s motion is GRANTED.
 

 Background
 

 The present action is one of six cases consolidated in this Court for pretrial proceedings by the Judicial Panel on Multidistrict Litigation.
 
 See In re Recombinant DNA Technology Patent and Contract Litig.,
 
 Docket No. 912 (J.P.M.L. Feb. 19, 1992),
 
 affd, In re Regents of the Univ. of Cal.,
 
 964 F.2d 1128 (Fed.Cir.1992);
 
 In re Recombinant DNA Technology Patent and Contract Litig.,
 
 Docket No. 912 (J.P.M.L. Oct. 1, 1993). The consolidated cases arose out of various research arrangements and license agreements among the Regents of the University of California (UC), Genenteeh, Inc. (Genenteeh) and Eli Lilly and Company (Lilly). The instant ease is the only one of the consolidated actions remaining actively litigated.
 
 [1]
 

 Genenteeh initiated the present action on August 6, 1990, in this Court by filing a complaint for a declaratory judgment that UC’s United States Patent Number 4,363,877 (the ’877 patent) is invalid, unenforceable and noninfringed. On the following day, UC filed a patent infringement action against Genenteeh in the Northern District of California, claiming that Genenteeh willfully infringes the ’877 patent. On August 27,1990, Genenteeh amended its Complaint in this Court, and the Amended Complaint not only sought a declaratory judgment, but also lodged antitrust and pendent state law claims against both UC and Lilly.
 

 UC objected to this Court’s jurisdiction over it, and on September 21, 1990, filed a motion to dismiss based on,
 
 inter alia,
 
 Eleventh Amendment immunity. In a February 4,1991, Entry, Judge Larry McKinney found that UC was an instrumentality of the State of California and, hence, UC’s actions were entitled to the protection of the Eleventh Amendment.
 
 See
 
 Order on Motion to Dismiss as to the Regents of the University of California, Cause Number IP-90-1679-C (S.D.Ind. Feb. 4, 1991). Furthermore, the
 
 *641
 
 district court determined that dismissal would be appropriate even without consideration of the Eleventh Amendment. Specifically, the court cited Seventh Circuit precedent holding that a declaratory judgment suit should be dismissed if that suit was filed in anticipation of an infringement suit.
 
 Id.
 
 (citing
 
 Tempco Elec. Heater Corp. v. Omega Eng’g, Inc.,
 
 819 F.2d 746 (7th Cir.1987)). According to the court, “Genentech filed this declaratory judgment suit because it knew UC was about to file an infringement suit, and in fact did file the suit one day later.”
 
 Id.
 
 at 7. Consequently, the court concluded, dismissal of Genentech’s declaratory judgment action was proper.
 

 Genentech appealed the district court’s dismissal of UC, and on July 1, 1993, UC again was made a party to this action when the Federal Circuit held that dismissal of UC was improper.
 
 Genentech, Inc. v. Eli Lilly & Co.,
 
 998 F.2d 931 (Fed.Cir.1993),
 
 cert. denied,
 
 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994). First, the Federal Circuit declined to apply the
 
 Tempco Electric
 
 rule to patent actions, reasoning that
 

 [s] uch a rule would automatically grant the patentee the choice of forum, whether the patentee had sought — or sought to avoid— judicial resolution of the controversy. This shift of relationship between litigants is contrary to the purpose of the Declaratory Judgment Act to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist.
 

 Id.
 
 at 937 (citation omitted). The court stated its preference for adherence to the general rule in which the forum of the first-filed case is favored, absent sound reasons for deviating from that rule. Because dismissal of UC was not grounded on such reasons, the court concluded, dismissal of it was improper.
 

 Next, the court turned to discuss the district court’s finding that UC was immune from suit by the United States Constitution’s Eleventh Amendment. The Federal Circuit preliminarily noted that
 

 [t] he district court treated the University as an arm of the state, with the same immunity as one of the United States. Although Genentech states that it does not concede this point, it was not placed at issue and for the purposes of this appeal the University position is accepted.
 

 Id.
 
 The court then determined that the legislation enacted on October 28, 1992 — 35 U.S.C. § 271(h) and 35 U.S.C. § 296 — effectively abrogated state immunity vis-a-vis all violations under the patent statute with respect to a state-owned patent. The court concluded that this abrogation “necessarily includes permitting the states to be a defendant in a suit asserting that the patent is in violation of the law.”
 
 Id.
 
 at 943.
 

 Finally, the Federal Circuit determined that Genentech’s declaratory judgment action required UC to “bring its charges of patent infringement against Genentech or be forever barred from doing so.”
 
 Id.
 
 at 947. Additionally, the court stated that if UC did respond to the declaratory judgment suit with patent infringement charges, Genentech then could defend against that charge and also could “bring compulsory counterclaims that are suitable for recoupment of damages that may be assessed against it.”
 
 Id.
 
 at 948. In its October 22, 1993, answer to Genentech’s Amended Complaint, UC lodged a number of defenses, including reassertion of Eleventh Amendment immunity. Moreover, UC asserted a patent infringement counterclaim. Subsequently, the issues in the above-captioned case have been reduced to: 1) Genentech’s claim that the ’877 patent is invalid, noninfringed and unenforceable; 2) UC’s counterclaim for patent infringement; and 3) Genentech’s claim that UC breached its third party beneficiary obligations to Genentech.
 

 On April 29, 1996, UC filed the motion presently under consideration. According to UC, new case law indicates that the Eleventh Amendment precludes Genentech’s declaratory judgment action and, hence, UC advances, dismissal is required. Notably, the case law on which UC focuses was not decided until 1996 — more than two years after the Federal Circuit determined that UC, even though an arm of the state, properly was a party to this action.
 

 Discussion
 

 UC contends that the United States Supreme Court’s recent decision in
 
 Seminole
 
 
 *642
 

 Tribe of Florida v. Florida,
 
 — U.S.-, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), dictates dismissal of the declaratory judgment action Genentech filed against it in this Court. According to UC,
 
 Seminole Tribe
 
 clearly illustrates that Congress had no power to abrogate UC’s immunity from such a declaratory judgment action. Genentech admits in its opposition brief that the
 
 Seminole Tribe
 
 opinion “contains some rather sweeping language concerning Article I of the Constitution”; Genentech suggests, however, that the Patent and Copyright Clause
 
 [2]
 
 and the Fourteenth Amendment
 
 [3]
 
 of the Constitution provided Congress with the power necessary to abrogate the states’ Eleventh Amendment immunity. Alternatively, Genenteeh argues that UC, by its conduct, has waived its immunity from suit. Notably, Genentech does not counter UC’s position that UC is an arm of the state and, as such, is entitled to Eleventh Amendment immunity.
 
 [4]
 

 The Court in
 
 Seminole Tribe
 
 considered a federal statute that reportedly had been enacted pursuant to Congress’ power under the Indian Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3. The petitioner in
 
 Seminole Tribe
 
 argued that in
 
 Pennsylvania v. Union Gas,
 
 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), the Court already had determined, in the context of the Interstate Commerce Clause, that Article I of the Constitution provides Congress with the necessary power to abrogate a state’s Eleventh Amendment immunity. The
 
 Seminole Tribe
 
 Court agreed with the petitioner that “the plurality opinion in
 
 Union Gas
 
 allows no principled distinction in favor of the States to be drawn between the Indian Commerce Clause and the Interstate Commerce Clause.”
 
 Seminole Tribe,
 
 — U.S. at-, 116 S.Ct. at 1127, 134 L.Ed.2d at 271.
 

 After determining that the Indian Commerce Clause and the Interstate Commerce Clause were indistinguishable for purposes of its discussion, the Court then held that
 
 Union Gas
 
 had been incorrectly decided and overruled it. The Court reasoned that when
 
 Union Gas
 
 was decided, the Eleventh Amendment already was well understood to limit the federal courts’ jurisdiction under Article III. The Court
 

 ... reconfirmed] that the background principle of state sovereign immunity embodied in the Eleventh Amendment is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal Government. Even when the Constitution vests in Congress complete lawmaking au
 
 *643
 
 thority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.
 

 Seminole Tribe,
 
 — U.S. at---, 116 S.Ct. at 1131-32, 134 L.Ed.2d at 276-77.
 

 Hence, presently, if the federal statutes through which Congress abrogated the states’ sovereign immunity as it relates to the patent laws — 35 U.S.C. §§ 271(h), 296— were enacted pursuant only to Article I, then this Court lacks Article III jurisdiction over Genentech’s declaratory judgment action.
 
 [5]
 
 Genenteeh, however, contends that Congress relied not only on its power under the Commerce Clause, but also relied on its power under the Fourteenth Amendment. To support this argument, Genenteeh focuses on the legislative history of the Patent and Plant Variety Protection Remedy Clarification Act (the Act), Pub.L. No. 102-560,106 Stat. 4230 (1992). In its report pertaining to the Act, the Senate Committee stated:
 

 Finally, the bill is justified as an acceptable method of enforcing the provisions of the fourteenth amendment. The court in
 
 Lemelson v. Ampex Corp.[,
 
 372 F.Supp. 708 (N.D.Ill.1974) ] recognized that a patent is a form of property, holding that a right to compensation exists for patent infringement. Additionally, because courts have continually recognized patent rights as property, the fourteenth amendment prohibits a State from depriving a person of property without due process of law. The same holds true in the area of trademarks. Furthermore, the fourteenth amendment gives Congress the authority to enforce this right. S. 758 and S. 759 represent a valid extension of Congress’ right to protect the property rights of patent and trademark holders.
 

 Patent and Plant Variety Protection Remedy Clarification Act, S.Rep. No. 102-280, 102d Cong., 2d Sess. 8 (1992),
 
 reprinted in
 
 1992 U.S.C.C.A.N. 3087, 3094.
 

 Genenteeh argues that patents are property; that section one of the Fourteenth Amendment prevents states from depriving persons of property without due process of law; and that section five of the Fourteenth Amendment grants Congress the power to enforce the provisions of the Fourteenth Amendment. Consequently, Genenteeh submits, Congress rightfully drew from its Fourteenth Amendment power when it amended the patent laws and thereby abrogated the states’ sovereign immunity from patent suits.
 

 We agree with Genenteeh that Congress drew in part from its Fourteenth Amendment power when it amended the statutes in issue. The Court, however, believes that the language of the Fourteenth Amendment, itself, limits Congress’ power as it applies to the instant case. Specifically, the Fourteenth Amendment prohibits a State from depriving any person of life, liberty, or property without due process of law. If Genenteeh were the owner of the ’877 patent and Genenteeh were suing UC for infringement of that patent, the Fourteenth Amendment would provide Congress with the power necessary to abrogate UC’s immunity. As Genentech claims, a patent is a protectable property right and to permit the State to infringe that property right without redress for the patent owner would deprive that owner of property without due process of law.
 

 This scenario, however, is not before us. Rather, UC is the patent owner, and Genenteeh has commenced a declaratory judgment action against UC. Consequently, Genenteeh has no property right in the subject patent. Moreover, Genenteeh has no protectable property right of which it is has been deprived without due process of law. According to UC, Genenteeh is infringing the ’877 patent in its manufacture of certain substances. Genenteeh is free to manufacture said substances until UC not only lodges an infringement action, but also secures either injunctive relief or final judgment in its favor. In either event, Genenteeh will have
 
 *644
 
 gotten due process of law before a deprivation occurs. Hence, we do not believe the statutory amendments in issue can be interpreted under the Fourteenth Amendment to abrogate UC’s sovereign immunity. We believe that doing so would require that we apply the subject statutes in an unconstitutional manner.
 

 Finally, we turn to discuss Genentech’s argument that UC has waived its Eleventh Amendment immunity. The Supreme Court has determined that a sovereign’s immunity may be waived, and thereby a state may consent to suit against it in federal court.
 
 Pehnhurst State Sch. & Hosp.,
 
 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). That consent, however, must be expressed unambiguously.
 
 Id.
 
 (Citation omitted).
 

 Our reluctance to infer that a State’s immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system. A State’s constitutional interest in immunity encompasses not merely
 
 whether
 
 it may be sued, but
 
 where
 
 it may be sued.
 

 Id.
 
 (Emphasis in original).
 

 In the context of Congressional abrogation of sovereign immunity, the Supreme Court has stated that
 

 “abrogation of sovereign immunity upsets ‘the fundamental constitutional balance between the Federal Government and the States,’ ’’
 
 Dellmuth v. Muth,
 
 491 U.S. 223, 227 [109 S.Ct. 2397, 2400, 105 L.Ed.2d 181] (1989) (quoting
 
 Atascadero State Hosp. v. Scanlon,
 
 473 U.S. 234, 238 [105 S.Ct. 3142, 3145-46, 87 L.Ed.2d 171] (1985)), and because States are unable directly to remedy a judicial misapprehension of that abrogation, the Court has adopted a particularly strict standard to evaluate claims that Congress has abrogated the States’ sovereign immunity.
 

 Port Authority Trans-Hudson Corp. v. Feeney,
 
 495 U.S. 299, 305, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990) (citation omitted). The
 
 Port Authority
 
 Court stated that the same strict standard is applicable in determining whether a State has waived its Eleventh Amendment immunity. Hence, in order to conclude that such waiver has occurred, the sovereign’s intention to waive its immunity must be unmistakably clear.
 
 Id.; see also Welch v. Department of Highways & Public Transp.,
 
 483 U.S. 468, 473, 107 S.Ct. 2941, 2946, 97 L.Ed.2d 389 (1987). (“‘[Because constructive consent’ is not a doctrine commonly associated with the surrender of constitutional rights,”
 
 Edelman v. Jordan,
 
 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974), the Court will find waiver by the State “only where stated ‘by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.’ ”
 
 Id.
 
 (quoting
 
 Murray v. Wilson Distilling Co.,
 
 213 U.S. 151, 171, 29 S.Ct. 458, 464-65, 53 L.Ed. 742 (1909)).
 

 In the instant case, Genentech. contends that the following events illustrate that UC has waived its sovereign immunity: UC obtained a federal patent; UC granted an exclusive license to Lilly, permitting Lilly to demand that UC sue Genentech in federal court; Lilly subsequently demanded that UC sue Genentech; and in response to Lilly’s demand, UC accused Genentech of infringing the ’877 patent and threatened suit. As previously stated, Genentech filed the instant declaratory judgment action one day before UC filed its infringement suit in the district court for the Northern District of California.
 

 Preliminarily, we acknowledge Genenteeh’s concern about the exclusivity of federal jurisdiction over patent eases. Specifically, Genentech observes that “[t]o hold that UC’s conduct does not waive its immunity would give UC the right — possessed by no other patent owner — to acquire patents and threaten infringement litigation in federal court of its own choosing without fear that a declaratory judgment aetion could be brought against it.”
 
 [6]
 
 Genenteeh’s Opp’n at 13. Al
 
 *645
 
 though Genentech’s observation is correct, we do not believe such concern affords much support in this arena given that our focus must be on the State’s consent to suit. To weigh heavily Genentech’s concern, we would have to find that UC’s decision to secure a patent is clear evidence that UC consented to suit in federal court. We are unpersuaded that procurement of a patent is evidence of consent to suit, let alone
 
 clear
 
 evidence of consent.
 

 Likewise, we fail to see how UC’s grant of an exclusive license to Lilly could tend to prove that UC consented to be sued in federal court. According to Genentech, the agreement between UC and Lilly stipulates that UC must sue infringers in federal court upon Lilly’s demand. Hence, when UC allegedly responded to Lilly’s demand by filing suit in federal court against Genentech, UC undoubtedly consented to such suit. However, we are unconvinced that an agreement requiring UC to bring a suit in federal court upon demand, without more, should be interpreted as consent to be sued.
 

 Similarly, we are unpersuaded that UC’s alleged infringement accusations and threats of suit against Genentech are sufficient to constitute an unambiguous expression of UC’s consent to suit in a federal forum. An alternate reasonable construction of UC’s alleged accusations and threats, for example, would be that UC believed such threats alone would prompt Genentech to halt what UC describes as infringing activities. Genentech apparently believes the Court should weigh the fact that UC filed suit in California a day after Genentech did so in Indiana as after-the-fact consent to be sued. Hence, the issue would become whether a state can consent to an earlier suit against it in a distant federal court by later filing its own action in a federal court located within its boundaries. Genentech points to no authority in support of this form of waiver, nor has the Court located any such authority.
 

 Present case law indicates that a state potentially can waive its immunity in the context of a case filed by another person or entity.
 
 See Vecchione v. Wohlgemuth,
 
 558 F.2d 150, 159 (3rd Cir.),
 
 cert. denied,
 
 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977) (finding waiver where state did not assert immunity until almost a year after its time to appeal order had expired);
 
 but see In re Department of Energy Stripper Well Exemption Litig.,
 
 956 F.2d 282, 286 (Temp.Emer.Ct.App.1992) (noting that federal courts have applied a tough standard for finding an implied waiver of Eleventh Amendment immunity, and holding that New Mexico’s intervention in suit in order to claim a portion of funds for its citizens did not waive its immunity), and
 
 Silver v. Baggiano,
 
 804 F.2d 1211, 1214 (11th Cir.1986) (holding that removal of suit to federal court by state officials did not constitute consent because removing officials did not have authority to consent). A state also can waive its immunity within the context of a state statute or state constitution.
 
 Micomonaco v. State of Wash.,
 
 45 F.3d 316, 319 (9th Cir.1995). This Court is not inclined to extend the current case law on waiver to include the conduct in issue in the instant case.
 
 [7]
 

 When the Federal Circuit upheld the decision of the Judicial Panel on Multidistrict Litigation to consolidate pretrial proceedings of the above-captioned and related actions, it concluded that the Panel’s “order does not force unconsented suit upon [UC], but simply coordinates pretrial proceedings, in the interest of efficiency.”
 
 In re Regents of the Univ. of Cal.,
 
 964 F.2d at 1134. Clearly, the Federal Circuit found that coordinating discovery in this Court without UC’s consent did not violate the principles of sovereign immunity. In today’s decision, however, we go beyond the issue of discovery. As explained
 
 supra,
 
 we are persuaded that UC has not consented to the initiation of cause number IP-90-1679-C in this Court.
 

 
 *646
 
 On March 22, 1994, we enjoined further prosecution of cause number IP-92-0223-C, reasoning that IP-90-1679-C was the mirror image of IP-92-0223-C and was the first of the two cases filed.
 
 See supra
 
 n. 1. In light of today’s decision, we
 
 sua sponte
 
 remove the stay of prosecution earlier entered in IP-92-0223-C — which renders IP-92-0223-C the only actively litigated case of the six cases consolidated in this court. We have at the same time requested the Judicial Panel to remand IP-92-0223-C to the Northern District of California for trial. Notably, because the two cases are mirror images, the discovery that has taken place in IP-90-1679-C fully is applicable to IP-92-0223-C.
 

 In summary, based on the strict standard applicable to the issue of consent, and guided by case law and by the United States Constitution, we conclude that dismissal of UC from this action is proper. Hence, for the foregoing reasons, we grant UC’s motion to dismiss cause number IP-90-1679-C for lack of jurisdiction and lift our March 22, 1994, stay of prosecution in cause number IP-92-0223-C.
 

 [1]
 

 . A settlement between Lilly and Genenteeh resulted in the resolution of cause numbers IP-88-1463-C, IP-87-02I9-C and IP-93-1340-C, as well as the elimination of Lilly’s and Genentech’s claims against one another in the present case.
 
 See
 
 Order, Cause Numbers IP-87-0219-C, IP-88-1463-C, IP-93-1340-C, IP-90-1679-C and IP-92-0223-C (S.D.Ind. Jan. 13, 1995) (orders entered pursuant to Lilly and Genentech's stipulations of dismissal).
 

 Moreover, this Court earlier enjoined further prosecution of cause number IP-92-0223-C in favor of IP-90-1679-C, the mirror image of IP-92-0223-C and the first of the two cases filed.
 
 See
 
 Entry Denying Genentech’s Motion to Amend Its Answer and Counterclaims and Enjoining Further Prosecution of IP-92-0223-C, Cause Number IP-92-0223-C (S.D.Ind. March 22, 1994) .
 

 Finally, on December 11, 1995, this Court issued a Memorandum of Opinion and Judgment following a bench trial of cause number IP-92-0224-C.
 
 See
 
 Memorandum of Opinion, Cause Number IP-92-0224-C-D/G (S.D.Ind. Dec. 11, 1995) , and Judgment, Cause Number IP-92-0224-C-D/G (S.D.Ind. Dec. 11, 1995).
 

 In light of the foregoing activity, only those claims between Genenteeh and UC in cause number IP-90-1679-C actively remain litigated.
 

 [2]
 

 . Article 1, Section 8, Clause 8 of the United States Constitution provides that Congress shall have the power
 

 To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.
 

 [3]
 

 . The Fourteenth Amendment to the United States Constitution provides, in relevant part:
 

 Section 1. All persons bom or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
 

 Section 5. The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.
 

 [4]
 

 . As noted,
 
 supra,
 
 in the text, Judge McKinney previously deemed UC an arm of the state, and for purposes of the appellate decision stemming from Judge McKinney’s Entry, the Federal Circuit assumed UC was an arm of the state. In a November 18, 1994, Entry, the undersigned determined that
 
 Parker
 
 immunity insulated UC from antitrust liability.
 
 See
 
 Entry Granting in Part and Denying in Part Genentech’s Motion for Leave to Further Amend Its Amended Complaint; Granting in Part and Denying in Part UC’s Motion to Dismiss Counts II-VIII of Genentech’s Amended Complaint; and Reinstating Genentech's § 1 Sherman Act Claim Against Lilly at 10-17, Cause Number IP-90-1679-C (S.D.Ind. Nov. 18, 1994). In that Entry, we determined that
 
 Parker
 
 immunity was available to UC because the state statutes in issue not only contemplated the subject acts, but also authorized the anticompetitive conduct.
 
 Id.
 

 [5]
 

 . An unconsenting state is immune from a suit regardless of the nature of the relief sought.
 
 Pennhurst State Sch. & Hosp. v. Halderman,
 
 465 U.S. 89, 100, 104 S.Ct. 900, 907-08, 79 L.Ed.2d 67 (1984). In fact, the
 
 Seminole Tribe
 
 plaintiff sought nonmonetary relief.
 

 [6]
 

 .
 
 This same argument has been offered and rejected in the context of whether Congress, by employing certain statutory language, intended to abrogate Eleventh Amendment immunity.
 
 See, e.g., Chew v. California,
 
 893 F.2d 331 (Fed. Cir.) (holding that "the exclusivity of a congressional power or the exclusiveness of the federal court remedy has not been relied upon as
 
 *645
 
 grounds or support for abrogation.”) (Citation omitted.),
 
 cert. denied,
 
 498 U.S. 810, 111 S.Ct. 44, 112 L.Ed.2d 20 (1990).
 

 [7]
 

 . We note that UC sought no affirmative relief in the context of the instant case until the Federal Circuit directed that UC either had to plead its infringement claim or be forever barred from doing so.
 
 See
 
 supra---. Subsequently, UC reasserted its Eleventh Amendment defense and lodged an infringement claim.