GENENTECH, INC., Plaintiff–Appellant,

v.

ELI LILLY AND COMPANY, Defendant,

and

**The Regents of the University of California, Defendant–Appellee.**

No. 91–1249.

United States Court of Appeals, Federal Circuit.

July 1, 1993.

Rehearing Denied Sept. 13, 1993.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Sept. 23, 1993.

Salem M. Katsh, Weil, Gotshal & Manges, New York City, argued, for plaintiff-appellant. With him on the brief, were Ira M. Millstein, Howard B. Comet, Edmund J. Fish and Patrick A. Fraioli, Jr. Also on the brief, were Hugh E. Reynolds and David T. Kasper, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN.

Thomas D. Nevins, III, Broad, Schulz, Larson & Wineberg, San Francisco, CA, argued, for defendant-appellee. With him on the brief, was Paula L. Baca. Also on the brief, were Allen B. Wagner, Office of the Gen. Counsel to the Regents of the University of California, Oakland, CA and Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, IN.

Before NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Genentech, Inc. appeals the judgment of the United States District Court for the Southern District of Indiana[1] dismissing, as to the Regents of the University of California ("the University"), the declaratory judgment action brought by Genentech against the University and Eli Lilly and Company ("Lilly"). We affirm in part, vacate in part and remand for further proceedings.

This is one of several lawsuits filed in the federal courts of Indiana and California involving these parties,[2] relating to recombinant DNA technology as used for the production of human growth hormone ("hGH"), a product having medicinal and therapeutic properties. The patent here involved is United States Patent No. 4,363,877 entitled "Recombinant DNA Transfer Vectors", granted December 14, 1982, inventors Howard M. Goodman, John Shine, and Peter H. Seeburg ("the '877 patent"). The patent is owned by the University.

The legal issues raised in this declaratory action relate to the infringement, validity, and enforceability of the '877 patent, and include charges by Genentech of violation of federal antitrust laws and state tort and contract laws based on certain patent licensing arrangements between the University and Lilly. The activities of the University are relevant to a threshold question in this appeal: whether the University, viewed as an arm of the state, is entitled, as to some or all of the charges made by Genentech, to Eleventh Amendment immunity under the Constitution of the United States or to State Action immunity. The University's activities are also relevant to another threshold question: whether the district court properly exercised its discretion in dismissing this declaratory judgment action as to the University.

The district court decided these questions under Federal Rules of Civil Procedure 12(b)(1) (lack of jurisdiction over the subject matter) and 12(b)(6) (failure to state a claim upon which relief can be granted), on motions

made by the University following the filing of Genentech's complaint. Therefore the premises and allegations of Genentech's complaint are accepted as true for the purpose of deciding these threshold questions.

Genentech filed this declaratory action against Lilly and the University in the Southern District of Indiana, requesting judicial declaration that the '877 patent is invalid and not infringed. Genentech also sought declaration that the '877 patent is unenforceable for inequitable conduct, Genentech alleging that a Certificate of Correction was obtained through false or misleading representations by the University to the Patent and Trademark Office. Genentech also alleged that a waiver from the Department of Health, Education & Welfare (herein "HEW", now the Department of Health and Human Services), that permitted the University to grant an exclusive license to Lilly, was obtained through false representations to HEW and omissions of fact. Genentech also asserted that certain contractual obligations estopped the University from enforcing the '877 patent against Genentech. In addition, Genentech raised antitrust and patent misuse counts and state law tort counts as grounds of patent invalidity, unenforceability, and other relief.

The day after Genentech filed this declaratory action the University filed a patent infringement suit against Genentech in the United States District Court for the Northern District of California. The University then moved in the Indiana district court to dismiss this declaratory action as to the University. The Indiana court granted the motion on the ground that the suit was barred by the University's immunity and, alternatively, on exercise of the court's discretion to decline to entertain this declaratory action. The suit as to Lilly was not dismissed.

As we shall discuss in Part I, the district court erred in declining to hear this action against the University under the Declaratory Judgment Act. As we shall discuss in Part II, the University is not immune from suit as

---

1. *Genentech, Inc. v. Eli Lilly & Co.*, No. IP 90–1679–C (S.D.Ind. Mar. 7, 1991).

2. Pending litigation, summarized in *In re Regents of the University of California*, 964 F.2d 1128, 1130–31, 22 USPQ2d 1748, 1750–51 (Fed.Cir. 1992), included five lawsuits.

to the patent counts and certain other counts of the complaint. Thus, the suit was improperly dismissed under Rules 12(b)(1) and 12(b)(6).

## I

## THE DECLARATORY ACTION

We review first the dismissal under the Declaratory Judgment Act, for if that ruling is sustainable the questions of constitutional and State Action immunity need not be addressed.

The Declaratory Judgment Act provides:

> 28 U.S.C. § 2201. In a case of actual controversy within its jurisdiction, except with respect to Federal taxes ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The use of the word "may" in § 2201 has been interpreted as meaning both that the court is authorized to declare legal rights and relations, and that in appropriate circumstances the court may decline to do so. *E.g., Minnesota Mining and Mfg. Co. v. Norton Co.,* 929 F.2d 670, 672, 18 USPQ2d 1302, 1304 (Fed.Cir.1991). However, the declaratory action is not a permissive action that may be heard or dismissed in absolute judicial discretion. *See* 10A Charles A. Wright *et al., Federal Practice and Procedure* § 2759, at 655–56 (2d ed. 1983 & Supp.1992) ("The discretion of the trial court is not absolute and the court cannot refuse to entertain a declaratory judgment action on a whim"); Edwin Borchard, *Declaratory Judgments,* 293–94 (2d ed. 1941) (although the court is granted discretion, it is "a judicial discretion, hardened by experience into rule, and its exercise is subject to appellate review"). The exercise of discretion in a declaratory judgment must have a basis in sound reason. *Samuel Goldwyn, Inc. v. United Artists Corp.,* 113 F.2d 703, 709 (3d Cir.1940).

An abuse of discretion may occur when the trial court's decision was based on an incorrect conclusion of law or clearly erroneous findings of fact, was devoid of any evidence in the record upon which the court rationally could have based its decision, or was clearly unreasonable or arbitrary. *Minnesota Mining,* 929 F.2d at 672–73, 18 USPQ2d at 1304–05. *See also Charter Financial Sav. Bank v. Office of Thrift Supervision,* 976 F.2d 203, 208 n. 8 (4th Cir.1992) (noting that most circuits give plenary review to the question of exercise of jurisdiction in a declaratory action); 6A James W. Moore *et al., Moore's Federal Practice* ¶ 57.08[2] at 57–36 (2d ed. 1993) ("The determination of the trial court may, therefore, be reversed where, though not arbitrary or capricious, it was nevertheless erroneous"). Indeed, the district court in this case, although it declined to entertain the declaratory action, did not do so arbitrarily. However, we conclude that it did so incorrectly.

## A

### *The Case of Actual Controversy*

To meet the requirements of the Declaratory Judgment Act there must be a "case of actual controversy", as the Constitution requires for any invocation of federal judicial authority. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). The case must be "of sufficient immediacy and reality" to warrant declaratory relief. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

Determination of whether there is an actual controversy in patent actions generally entails the two part inquiry of (1) whether the declaratory plaintiff has acted in a way that the patentee asserts infringes the patent, or is preparing to act in such a way; and (2) whether the patentee has created, in the declaratory plaintiff, a reasonable apprehension of suit for infringement. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735–36, 6 USPQ2d 1685, 1688–89 (Fed.Cir.1988). When the patentee has explicitly charged that a current activity of the

declaratory plaintiff is an infringement, "certainty has rendered apprehension irrelevant, and one need say no more." *Id.* at 736, 6 USPQ2d at 1689.

The University does not dispute that it charged Genentech with infringement of the '877 patent. Thus the case of actual controversy requirement was met.

### B

### *The Tempco Electric Case*

■ When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory action is not subject to dismissal. *See* Borchard, *supra*, at 299 (discussing criteria guiding policy in favor of rendering declaratory judgments). In this case the district court based its dismissal as to the University on the subsequent filing of a patent infringement suit by the University. The district court relied on *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 2 USPQ2d 1930 (7th Cir.1987), which held that an action for declaration of noninfringement of a trademark should give way to a later-filed suit for trademark infringement. The court in *Tempco Electric*, dismissing the declaratory action, reasoned that the action served no useful purpose because the declaratory defendant soon thereafter filed a trademark infringement suit.

The question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits. Thus, although the Federal Circuit applies the procedural law of the regional circuit in matters that are not unique to patent law, *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1563, 5 USPQ2d 1769, 1774 (Fed. Cir.), *cert. denied*, 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988), and although matters of procedure do not always carry substantive weight, the regional circuit prac-

tice need not control when the question is important to national uniformity in patent practice. We incidentally take note that the rule of *Tempco Electric* is not followed for trademark cases in all circuits.

We decline to apply *Tempco Electric* to patent cases. Such a rule would automatically grant the patentee the choice of forum, whether the patentee had sought—or sought to avoid—judicial resolution of the controversy. This shift of relationship between litigants is contrary to the purpose of the Declaratory Judgment Act to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist. *See* Borchard, *supra*, at 803–04; 6A Moore *et al.*, *supra*, ¶ 57.08[2] (discretion to render declaratory judgments should be exercised to effectuate the purposes of the Declaratory Judgment Act).

We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.

### C

### *The General Rule*

The general rule favors the forum of the first-filed action, whether or not it is a declaratory action. *See* Borchard, *supra*, at 818–20. Exceptions, however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum. *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081–83, 12 USPQ2d 1997, 1999–2001 (Fed.Cir.1989) (discussing the general rule, the "customer suit" exception, and other factors that overcome "the presumptive right of the first litigant to choose the forum").

■ The general rule as applied to patent cases was discussed in *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200, 92 USPQ 1 (1952). "If [the alleged infringer] is forehanded, subsequent suits against him by the patentee can within the trial court's discretion be enjoined pending determination of the declaratory judgment suit. . . ." *Id.* at

185, 72 S.Ct. at 222, 92 USPQ at 3. As the Court recognized, the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served. *Id.* at 184, 72 S.Ct. at 221, 92 USPQ at 2. There must, however, be sound reason that would make it unjust or inefficient to continue the first-filed action. Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest. *Kahn,* 889 F.2d at 1081–83, 12 USPQ2d at 1999–2001.[3] The Court cautioned against "rigid mechanical solution[s]" to questions of forum, stressing the importance of conservation of judicial resources and the comprehensive disposition of litigation. *Kerotest,* 342 U.S. at 183, 72 S.Ct. at 221, 92 USPQ at 2.

■ The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action. When the declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action. In this case, the district court's dismissal of the University from the action in Indiana due to the filing of a subsequent suit by the University in California, while retaining the action in Indiana against Lilly, has led to a redundancy of litigation on some of the issues involving these three parties. The purpose of "prevent[ing] multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters", *Southern Construction Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962), is as valid for declaratory action as any other. The Court remarked that the compulsory counterclaim rule is particularly

directed against the failure of a party to assert a counterclaim in one action, followed by the institution of a second action wherein the counterclaim is the basis of the complaint. *Id.; see also* Fed.R.Civ.P. 13(a) (all issues between the parties arising from the same transaction or occurrence are required to be raised in the same suit). This is the pattern that here occurred.

The only stated reason for the district court's discretionary dismissal of the University from Genentech's declaratory action against the University and Lilly was that the University subsequently brought suit against Genentech elsewhere. That reason, as we have discussed, is insufficient to warrant refusal to entertain the action. We are not unmindful that this declaratory action was filed in Indiana only one day before the California infringement action. However, the rule favoring the right of the first litigant to choose the forum, absent countervailing interests of justice or convenience, is supported by "[reasons] just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits." *Martin v. Graybar Elec. Co.,* 266 F.2d 202, 205 (7th Cir.1959) (quoting *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474, 475 (3d Cir.1942)).

The University points out that first-filed suits have sometimes been dismissed when forum shopping was the only motive for the filing. That exception was recognized in *Kahn,* 889 F.2d at 1081, 12 USPQ2d at 1999. In this case, however, there were sound reasons presented for Genentech's choice of the Indiana forum, for in its suit Genentech joined Lilly, an Indiana company, and sought consolidation with suits already pending in Indiana. We do take note that the Judicial Panel on Multidistrict Litigation has determined that there is considerable overlap among this declaratory action in Indiana, the action filed in California by the University, and three other actions involving various

---

**3.** Although there are other reasons, equitable and legal in nature, why a declaratory judgment action may not be entertained in the court's sound discretion, *see, e.g., Steffel v. Thompson,* 415 U.S. 452, 460–62, 94 S.Ct. 1209, 1216–17, 39 L.Ed.2d 505 (1974) (when a state proceeding is pending, considerations of equity, comity and federalism may counsel against exercise of federal jurisdiction), none is here raised.

combinations of these parties in Indiana and California district courts. The Multidistrict Panel, hearing the arguments of all three parties on the choice of forum, ordered consolidation of these five actions for purposes of discovery and assigned coordination to the Indiana district court. That order was affirmed in *In re Regents of the University of California,* 964 F.2d 1128, 22 USPQ2d 1748 (Fed.Cir.1992). Although both sides now argue the merits of the Indiana versus the California forums, resolution of that question is not before us. Upon completion of the consolidated discovery, consideration should be given to further avoidance of duplicative litigation.

## Conclusion

We conclude that it was incorrect to apply the *Tempco Electric* rationale to patent actions. Absent sound reason presented for dismissal of the University from the Indiana action in favor of a later-filed suit in California, dismissal as to the University was improper on discretionary grounds.

We thus reach the alternate grounds of dismissal, based on the Eleventh Amendment and the doctrine of State Action immunity.

## II

### STATE IMMUNITY FROM SUIT

The University is a public corporation of the State of California. The California Constitution established the University as "a branch of the state government equal and coordinate with the legislature, the judiciary, and the executive." 30 Ops.Cal.Atty.Gen. 162, 166 (1957). *See BV Engineering v. University of California,* 858 F.2d 1394, 1395, 8 USPQ2d 1421, 1422 (9th Cir.1988), *cert. denied,* 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 859 (1989) (describing the University of California and the Board of Regents as instrumentalities of the state).

The district court treated the University as an arm of the state, with the same immunity as one of the United States. Although Genentech states that it does not concede this point, it was not placed at issue and for the purposes of this appeal the University position is accepted.

### A

#### The Constitutional Plan

The district court held that this suit against the University is prohibited by the Eleventh Amendment to the Constitution:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Genentech argues that the Eleventh Amendment does not bar this action.

State immunity from suit in federal court is founded upon the fundamental relationship and constitutional balance between the federal government and the states. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98–99, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984). In general, without the state's consent a federal court is without power to entertain a suit by a private person against the state. *Employees of Dep't of Public Health & Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 284, 93 S.Ct. 1614, 1617, 36 L.Ed.2d 251 (1973) (discussing the federal/state relationship). As it was explained in The Federalist No. 81, at 487–88 (Alexander Hamilton) (Clinton Rossiter ed., 1961): "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent....* Unless, therefore, there is a surrender of this immunity in the plan of the convention, it will remain with the States...." (Emphasis in original.)

There are qualifications to the reach of the Eleventh Amendment, again in implementation of the constitutional plan. Thus Congress has legislatively abrogated state immunity in specific circumstances, based variously on the enforcement provision of § 5 of the Fourteenth Amendment (granting Congress authority to enforce "by appropriate legislation" the provisions of the Fourteenth Amendment), *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976) (statute abrogated state

immunity from suit for employment discrimination); *Hutto v. Finney*, 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2574–75, 57 L.Ed.2d 522 (1978) (statute abrogated state immunity from award of attorney's fees), or on the authority of the Commerce Clause, wherein the states are deemed to have consented to suit on congressionally created causes of action against a state, *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 19–23, 109 S.Ct. 2273, 2283–86, 105 L.Ed.2d 1 (1989) (plurality). Such abrogation of immunity must be explicit and unambiguous, and must show clearly that Congress intended to subject the states to suit in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985); *Union Gas*, 491 U.S. at 7–13, 109 S.Ct. at 2277–81.

 A state may waive its immunity, in its entirety or as to any specified agency, action, or event. "[T]he Court consistently has held that a State may consent to suit against it in federal court." *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907. "The immunity from suit belonging to a State, which is respected and protected by the Constitution ... is a personal privilege which it may waive at pleasure[.]" *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883). Waiver by a state can be effected by state statute or state constitution or by clear state conduct. A state statute may be construed to waive Eleventh Amendment immunity. *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) (reference in state statute to "judicial district, established ... by the United States" shows intent to include suit in federal court in statutory waiver). A state may by its actions be deemed to have waived its immunity as to a specific cause. *Clark v. Barnard*, 108 U.S. at 436, 2 S.Ct. at 878 (state's filing of a claim in federal court waived Eleventh Amendment immunity as to the subject matter of that claim). The Court in *Atascadero State Hospital*, stressing the need for specificity in waiver by the state, held that Article III, § 5 of the California Constitution, which provides that "[s]uits may be brought against the State in such manner and in such courts as shall be directed by law", is not a general waiver of immu-

nity in federal court. 473 U.S. at 241, 105 S.Ct. at 3146.

 The California Constitution also contains a specific waiver of immunity for the University. Through its Regents the University is "vested with the legal title and the management and disposition of the property of the university", and is granted "all the powers necessary or convenient for the effective administration of its trust, including the power to sue and to be sued". Cal. Const. art. IX, § 9(f). However, an authorization to an arm of the state to sue and be sued is not presumed to include suit in federal court. *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 876, 88 L.Ed. 1121 (1944); *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. at 3146.

 In addition to abrogation and state waiver of immunity, state officials may be sued as individuals in certain circumstances. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Genentech sought to amend its complaint to include the individual Regents of the University, upon the district court's holding of Eleventh Amendment immunity. Genentech appeals from the denial of that request. We need not reach this question for, as we next discuss, the University's immunity has been abrogated as to the major issues in suit.

### B

#### Public Law 102–560

Genentech argues that since patent rights can be enforced only in federal court, and the University has used its power to sue and be sued for the purpose of conducting and threatening patent litigation in federal court, the University has waived its immunity from suit in federal court. It has become unnecessary to decide this question broadly, for in legislation enacted October 28, 1992 Congress abrogated state immunity from suit for violation of patent law. Patent and Plant Variety Protection Remedy Clarification Act, Pub.L. No. 102–560, 106 Stat. 4230 (1992). The Patent Clause, the Commerce Clause, and § 5 of the Fourteenth Amendment were mentioned as authority for this legislation. S.Rep. No. 280, 102d Cong., 2d Sess. 7–8

(1992) ("*Senate Report*"), U.S.Code Cong. & Admin.News 1992, p. 3087.

When the purpose of a federal statute is to abrogate a state's immunity from suit, that abrogation must be explicit and unequivocal. *Atascadero State Hosp.,* 473 U.S. at 243, 105 S.Ct. at 3147; *Union Gas,* 491 U.S. at 7, 109 S.Ct. at 2277. Thus, the following provisions were added to Title 35 of the federal code:

**35 U.S.C. § 271(h).** As used in this section, the term "whoever" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

**35 U.S.C. § 296. Liability of States, instrumentalities of States, and State officials for infringement of patents.**

(a) IN GENERAL.—Any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his official capacity, shall not be immune, under the eleventh amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity, for infringement of a patent under section 271, or for any other violation under this title.

(b) REMEDIES.—In a suit described in subsection (a) for a violation described in that subsection, remedies (including remedies both at law and in equity) are available for the violation to the same extent as such remedies are available for such a violation in a suit against any private entity. Such remedies include damages, interest, costs, and treble damages under section 284, attorney fees under section 285, and the additional remedy for infringement of design patents under section 289.

Pub.L. No. 102–560, §§ 2(a)(1) and 2(a)(2), 106 Stat. 4230 (1992).

▮ The University does not seriously dispute that this enactment abrogated an area of state immunity. The University ar-

gues, however, that this enactment relates only to patent infringement by the state; that it does not encompass declaratory actions against the state; that it does not abrogate the University's immunity from Genentech's antitrust and state law tort and contract claims; and that the enactment does not apply to the action at bar.

*1. Infringement and Other Violations Under the Patent Law.*

The University argues that it is incorrect to apply Public Law 102–560 to any violation under Title 35 other than patent infringement by the state. Thus the University asserts that none of the issues of Genentech's declaratory complaint is subject to suit by virtue of this enactment.

The University states that the new 35 U.S.C. § 271(h) merely addresses the definition of "whoever" for purposes of infringement actions under the existing § 271, and that the caption of 35 U.S.C. § 296 makes clear the intended limitation of that provision to infringement by the state. The University argues that Congress did no more than overrule *Chew v. California,* 893 F.2d 331, 13 USPQ2d 1393 (Fed.Cir.), *cert. denied,* 498 U.S. 810, 111 S.Ct. 44, 112 L.Ed.2d 20 (1990) and *Jacobs Wind Electric Co. v. Florida Department of Transportation,* 919 F.2d 726, 16 USPQ2d 1972 (Fed.Cir.1990), for in *Chew* and *Jacobs Wind* this court held that the Eleventh Amendment provides the states with absolute immunity from suit for patent infringement.

Genentech argues that Public Law 102–560 by its terms is not limited to infringement by the state, and that the words "or for any other violation under this title" in § 296(a) leave no doubt that the abrogation applies to all violations under Title 35 by the state. Genentech points to the plain language of the statute, its explicit statement of intent, and the absence of exceptions in either the statute or the legislative history.

▮ The starting point in interpreting any act of Congress is the text of the statute itself. The words of a statute are deemed to have their plain meaning in the lexicon of the subject matter of the legislation. *United*

942

*States v. Rutherford,* 442 U.S. 544, 551–52, 99 S.Ct. 2470, 2474–75, 61 L.Ed.2d 68 (1979) (plain language of statute controls unless it leads to " 'absurd results', or consequences obviously at variance with the policy of the enactment as a whole"). When the statutory text is clear, when the legislative intent is unmistakable, and when the legislative intent is implemented by the statute, that ends the inquiry.

■ Should the statutory text be afflicted by ambiguity in meaning or in application to a particular case, the legislative history can often provide useful guidance. Only in the rare case, when "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters", should a statute be construed in departure from its plain language. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). This is not such a rare case.

■ Public Law 102–560 explicitly abrogates state immunity from suit for all violations under Title 35, unlimited to the factual situation of *Chew* and *Jacobs Wind* where the only violation was infringement by the state. A statute must be interpreted to give effect to each of its provisions. *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) ("settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect"); *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979) (it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative"); *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955) ("The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word of a statute ... rather than to emasculate an entire section.") (Citations and quotations omitted.) Thus the words "or for any other violation under this title" can be neither judicially excised nor judicially ignored. Indeed, the legislative history shows the intent of Congress that states not be immune

from the federal laws governing intellectual property. *Senate Report* at 11.

■ The University position is supported in the observation that the headings of 35 U.S.C. §§ 271 and 296 mention only infringement. Headings are often helpful in interpreting an ambiguous text. *Immigration and Naturalization Serv. v. National Ctr. for Immigrants' Rights,* —— U.S. ——, ——, 112 S.Ct. 551, 556, 116 L.Ed.2d 546 (1991). However, there is

the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase.... But they cannot undo or limit that which the text makes plain.

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.,* 331 U.S. 519, 528–29, 67 S.Ct. 1387, 1391–92, 91 L.Ed. 1646 (1947) (citations omitted). The text of Public Law 102–560 is not ambiguous. The text does not contradict the section headings, although it is broader than the headings. Headings can not of themselves operate to take a significant portion of the textual subject matter out of the statute. It would be incorrect to apply these headings to nullify the clause "or for any other violation under this title."

The conclusion that Public Law 102–560 is not limited to infringement by the state is reinforced by the explicit statement, in each section of the enactment, that its purpose is to place the states in the same position as nongovernmental entities as to the patent law. 35 U.S.C. §§ 271(h), 296(a) and (b). That purpose would not be achieved by the University's interpretation, for if the states were to continue to be immune from suit for violation of all provisions of Title 35 other than infringement, the states would not be coequal with nongovernmental entities. In introducing this legislation Senator DeConcini stressed that "States continue to take advantage of the sovereign immunity loophole that remains in the Patent Code". 137 Cong.Rec. S4046 (daily ed. Mar. 21, 1991). It would be incorrect to truncate the statute which as written achieves the legislative purpose, thereby to reopen the loophole that the statute was designed to close.

We conclude that Public Law 102–560 includes, in its abrogation of state immunity, all violations under Title 35 with respect to a patent owned by the state. .

### 2. The Declaratory Action.

The University points out that declaratory action against a state is not mentioned in Public Law 102–560, and argues that state immunity was not abrogated for suit by declaratory action. Genentech states that the University never had immunity from declaratory action when the University itself created the case of actual controversy, and in all events that since the University violated the Patent Act by obtaining and enforcing an invalid, unenforceable, and uninfringed patent, the statutory abrogation of immunity clearly includes this declaratory action.

A declaratory action neither confers nor constrains jurisdiction or immunity. The Declaratory Judgment Act does not provide a substantive right; it provides a procedure whereby an aggrieved person may obtain a declaration of legal rights and relations. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950) (the declaratory judgment statute is not an independent basis for jurisdiction); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937) (the Declaratory Judgment Act is procedural only); 6A Moore et al., supra, ¶ 57.05 (the Declaratory Judgment Act is remedial and procedural in nature, creates no substantive rights, and neither augments nor diminishes federal jurisdiction). It is the Patent Act that states the law; the declaratory judgment procedure may be invoked when there is a controversy concerning an assertion of substantive rights under the Patent Act. To determine jurisdiction or immunity as to a particular cause of action it is necessary to look to the substantive violation and other relevant criteria, not to the procedure for obtaining relief.

An action seeking declaration of patent invalidity arises under the patent law, C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 879–80, 219 USPQ 197, 201–03 (Fed.Cir.1983), as do actions seeking declaration of infringement, see Lang v. Pacific Marine & Supply Co.,

895 F.2d 761, 763–64, 13 USPQ2d 1820, 1821 (Fed.Cir.1990), and declaration of noninfringement, see Cordis Corp. v. Medtronic, Inc., 835 F.2d 859, 862–63, 5 USPQ2d 1118, 1120–21 (Fed.Cir.1987). See generally Borchard, supra, at 808 (declaratory actions on infringement or validity, initiated by a patentee or alleged infringer, arise under patent law).

Title 35 contains a variety of provisions that are subject to violation. E.g., Chemcast Corp. v. Arco Indus. Corp., 913 F.2d 923, 930, 16 USPQ2d 1033, 1039 (Fed.Cir.1990) (discussing violation of requirement of § 112 to disclose the best mode); J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577, 1583, 229 USPQ 435, 439 (Fed.Cir.), cert. denied, 479 U.S. 884, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986) (discussing violation of § 102(b) based on on-sale activity); Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1571, 24 USPQ2d 1401, 1412 (Fed.Cir.1992) (discussing violation of utility requirement of § 101).

Although claims of patent invalidity are not actionable absent an actual controversy, International Medical Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc., 787 F.2d 572, 576, 229 USPQ 278, 281 (Fed. Cir.1986), in this case the actual controversy arose when the University accused Genentech of patent infringement. Arrowhead, 846 F.2d at 735–36, 6 USPQ2d at 1688–89; C.R. Bard, 716 F.2d at 881–82, 219 USPQ at 204. The issues of invalidity and noninfringement that were raised by Genentech in seeking resolution of that controversy are encompassed by the legislative abrogation of state immunity. Public Law 102–560, abrogating states' immunity from suit under the patent statute, necessarily includes permitting the states to be a defendant in a suit asserting that the patent is in violation of the law. There is no exception in Public Law 102–560 that preserves state immunity depending on the procedure by which issues are raised. Indeed, such an exception would contravene the legislative purpose of conferring equal status on states and nongovernmental entities under the patent law.

We conclude that Genentech's declaratory action against the University is within the statutory abrogation of state immunity, for the counts of the complaint that arise under the patent law.

### 3. The Effective Date.

The University argues that even if its immunity were abrogated by Public Law 102–560, that abrogation does not apply to this case. The Act states:

**Sec. 4. Effective Date.**

The amendments made by this Act shall take effect with respect to violations that occur on or after the date of the enactment of this Act.

Pub.L. No. 102–560, § 4, 106 Stat. 4230, 4232 (1992). Since the Act does not abrogate immunity for violations that occurred before October 28, 1992, the University asserts that it does not apply to cases filed before that date.

Genentech invokes the general rule that changes in law apply to cases that are pending before the courts, unless the interest of justice, or the law itself, requires otherwise. "[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *see Andrus v. Charlestone Stone Prods. Co.,* 436 U.S. 604, 607–08 n. 6, 98 S.Ct. 2002, 2004–05 n. 6, 56 L.Ed.2d 570 (1978) (applying statute enacted while appeal was pending). This general rule has been applied to congressional abrogations of state immunity. *E.g., Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (Superfund amendments, enacted while petition for certiorari pending, applied to abrogate state's Eleventh Amendment immunity); *United States v. Alabama,* 362 U.S. 602, 604, 80 S.Ct. 924, 926, 4 L.Ed.2d 982 (1960) (Civil Rights Act of 1960, enacted shortly before the Supreme Court heard the case, applied to abrogate state immunity for past violations). Thus a suit that may have been subject to

state immunity at the time it was filed can continue to be prosecuted when the immunity is legislatively lifted. Requiring dismissal "would be wasteful to both the parties and the courts ... for [the case] could be at once refiled." *Sandefur v. Cherry,* 718 F.2d 682, 684–85 (5th Cir.1983). In the absence of "manifest injustice", *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2015, we apply Public Law 102–560 to this case.

Public Law 102–560 provides in effect that there shall be no recovery for violations that occurred before October 28, 1992. This accords with the general rule that "a retrospective operation will not be given to a statute ... unless such be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." *Union Pac. R.R. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913) (citations and quotations omitted). Since Genentech's suit is for a declaration of rights and relationships, and not for recovery of damages for past violations under Title 35, and since violations of patent rights are continuing events, it appears to be unnecessary to decide whether there was an earlier nonstatutory waiver of University immunity with respect to the patent counts. We thus do not reach the question of whether the University by its conduct had waived any immunity it may have had from suit under the patent law. It is, however, necessary to consider the disposition of the antitrust and state law counts of Genentech's declaratory complaint, for these counts are not within the statutory abrogation, and all of the counts were dismissed on the basis of state immunity.

### C

#### The Antitrust and State Law Counts

Genentech's complaint as amended included charges that various agreements between Lilly and the University, and certain actions taken by the University at the behest of Lilly, constituted violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, as amended.[4] Genentech also charged that the

---

4. **15 U.S.C. § 1** (in part). Every contract, combination in the form of trust or otherwise, or con-

spiracy, in restraint of trade or commerce among

University's agreements and actions violated state laws relating to unfair competition, fraud, breach of contract, breach of third party obligations, and tortious interference with contract. Genentech also claimed that its 1980 contract with the University estops the University from charging Genentech with infringement. Genentech states that these actions render the '877 patent unenforceable against it, and also serve to recoup any damages that Genentech might incur for infringement. Genentech thus argues that inclusion of the antitrust and state law counts in this litigation is necessary to avoid injustice, and to resolve all of the issues between the parties.

The district court's dismissal of these counts was grounded on the University's asserted Eleventh Amendment and State Action immunities. Review of this dismissal, which was in terms of Federal Rules 12(b)(1) and 12(b)(6), requires that the factual premises and allegations of Genentech's complaint be deemed established. We outline some of the facts, undisputed for this purpose, that are relevant to the antitrust and state law counts:

Lilly provided funding for certain research at the University relating to the subject matter of the '877 patent, and had the option to acquire from the University the exclusive license to any patent that resulted from the Lilly-funded research. Certain other research was funded by HEW, and was subject to the requirement that any patent resulting from HEW-funded research would be made available to qualified applicants by non-exclusive license. The University had in 1980 entered into an agreement with Genentech that provided, *inter alia*, that the University would notify Genentech if Lilly exercised its option for an exclusive license, so that, according to Genentech, it could obtain a mandatory sublicense. Genentech states that at the behest of Lilly the University obtained, through misrepresentations and omissions of fact, a waiver of HEW's licensing requirement, and the University and Lilly then en-

tered into an exclusive license, with payment by Lilly of a royalty to the University. Among other terms, this license provided that the University would at Lilly's request enforce the '877 patent against infringers, and that if the University did not take such requested legal action it would forfeit the royalty payments.

Genentech premised its antitrust and state law tort and contract charges on these and related events. The district court dismissed the antitrust and state law counts as barred by the Eleventh Amendment, and the antitrust counts as barred by the State Action doctrine. In view of the abrogation of immunity for violation of patent law, Public Law 102–560, we first consider the relation of these counts to the patent counts.

*1. Defenses.*

Genentech points out that the University must plead its charge of patent infringement in response to Genentech's action for declaration of noninfringement, lest the University's charge be barred as *res judicata*. *See* Fed. R.Civ.P. 13(a); *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). Genentech states that its antitrust and state law claims are an integral part of its defense to the University's charge of patent infringement, and therefore that these claims are appropriately raised in the declaratory judgment complaint. *See Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479, 20 USPQ2d 1241, 1249 (Fed.Cir.1991) (the "claim" of a declaratory judgment action is based on the patent owner's charge of infringement; the declaratory complaint raises anticipatory defenses to this charge). The University's position is that it is irrelevant whether any of the antitrust and state law claims are defenses or counterclaims to the charge of patent infringement, for they were not included in any abrogation or waiver of the University's immunity from

the several States, or with foreign nations, is declared to be illegal.

**15 U.S.C. § 2** (in part). Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or

persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.

suit in federal court. Thus the University asserts that these claims can not be raised against it in this action.

When a state maintains a claim in federal court it thereby consents to the exercise of federal judicial authority over that claim "to the full extent required for its complete determination." *Clark v. Barnard,* 108 U.S. at 448, 2 S.Ct. at 883. The principles of federalism underlying the Eleventh Amendment do not prevent a person from defending against an action by a state. *See In re Regents,* 964 F.2d at 1134, 22 USPQ2d at 1754 (the Eleventh Amendment is not designed to give procedural advantage to state claimants); *In re Greenstreet, Inc.,* 209 F.2d 660, 664 (7th Cir.1954) (when the government initiates legal action it thereby "consents to the jurisdiction of the court to entertain any defensive plea").

The University's charge of patent infringement is the claim that creates the controversy which supports the declaratory judgment action. The Eleventh Amendment does not bar the raising by Genentech of its defenses to the University's charge of patent infringement, whether these defenses arise under federal or state law. Thus the counts that are defenses to the charge of patent infringement, such as the defense of contract-based estoppel and the defense of unenforceability based on antitrust violation, are as available to the accused infringer as are the defenses of patent invalidity and noninfringement.

Although the University argues that it has not consented to the adjudication of any state law theories in federal court, consent is not required as to defenses to the University's charge of patent infringement. The University asserts that *Pennhurst* prohibits a private party from maintaining any state law claim against a state in federal court. *See* 465 U.S. at 106, 104 S.Ct. at 911 ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"). In *Pennhurst* the petitioner sought to coerce state action. There was no issue of defending against state charges or threatened charges by invoking state law. The affront to principles of feder-

alism addressed in *Pennhurst* is not present here.

Genentech also states that the University committed fraud in the patent office in obtaining a Certificate of Correction under conditions that Genentech alleges did not meet the requirements of 35 U.S.C. § 255. Such acts if proved would in any event violate the patent law, and to that extent state immunity was abrogated by Public Law 102–560, which applies to "the eleventh amendment [or] any other doctrine of sovereign immunity". 35 U.S.C. § 296(a).

### 2. Counterclaims.

Nor is the University's consent required for those counterclaims that are properly raised in recoupment of the University's charges. The general rule, although not without debate, is that when a governmental entity has waived its immunity from federal judicial authority by taking legal action in federal court, the person charged can raise all counterclaims that arise from the same transaction or events. *E.g., Livera v. First Nat'l State Bank,* 879 F.2d 1186, 1195–96 (3d Cir.), *cert. denied, Livera v. Small Business Admin.,* 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989) ("a defendant may assert by way of recoupment *any claim* arising out of the same transaction or occurrence ... in order to reduce or defeat the government's recovery") (emphasis in original). The summary by Professor Wright with respect to the federal government is applicable to states:

> Despite the sovereign immunity doctrine and the language of Rule 13(d), when the United States institutes an action, defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery. However, if defendant's claim arises from a different transaction or occurrence, then it is in effect an independent suit and it may be asserted as a setoff or counterclaim only if the government has waived its sovereign immunity.

6 Charles A. Wright *et al., Federal Practice and Procedure* § 1427 (2d ed. 1990) (foot--

notes omitted). *See also In re Monongahela Rye Liquors, Inc.,* 141 F.2d 864, 869 (3d. Cir.1944) (recoupment rule applies to states); 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice* ¶ 13.19[2.–2] (2d ed. 1992) (recoupment by counterclaims against a state) (collecting cases).

Cases applying this rule are highly fact-dependent, as the courts have considered whether an issue that was raised by counterclaim is suitable for recoupment of damages assessed in favor of the state. *E.g., United States v. Montrose Chem. Corp.,* 788 F.Supp. 1485, 1492–94 (C.D.Cal.1992) (chemical company's state law counterclaims arising out of the same events as state's CERCLA action in federal court, with recovery limited to recoupment, does not violate Eleventh Amendment or sovereign immunity); *New York v. Johnstown,* 701 F.Supp. 33, 37–38 (N.D.N.Y.1988) (state law compulsory counterclaims seeking recoupment against state-brought CERCLA claim do not violate state immunity); *Burgess v. M/V Tamano,* 382 F.Supp. 351, 355–56 (D.Me.1974) (requiring that state law counterclaims arise out of the event underlying state's claim for damages); *Alaska v. O/S Lynn Kendall,* 310 F.Supp. 433, 434 (D.Alaska 1970) (limiting to recoupment defendant's potential recovery on state law counterclaims).

■ Depending on the particular facts, precedent is mixed as to whether the cause of action raised by counterclaim must be of the same category as the state's claim. For example, a tort claim has been held effective to recoup damages against a contract claim. *E.g., United States v. Irby,* 618 F.2d 352, 356–57 (5th Cir.1980). The controlling factor is whether the counterclaim arose out of the same transaction or occurrence. *E.g., In re Monongahela Rye Liquors,* 141 F.2d at 869 (trustee's claim for money due for liquor sold to state manifestly unrelated to state's tax claim against the bankrupt estate).

■ Certain of Genentech's state law counts are properly viewed not as defenses but as counterclaims against the University's charge of infringement, such as the claims for tortious interference with contract and unfair competition. Whether these counterclaims are deemed "compulsory" determines whether they may be pursued in this action for purposes of recoupment of the University's claims against Genentech. Absent consent to suit or waiver or abrogation of immunity, affirmative relief beyond recoupment is not available on such claims. *See, e.g., United States v. Shaw,* 309 U.S. 495, 501–02, 60 S.Ct. 659, 661–62, 84 L.Ed. 888 (1940) (rejecting the contention that when the sovereign voluntarily seeks the aid of the courts it thereby takes the form of a private suitor and fully subjects itself to any claim). Recoupment, however, is an established remedy based on the principle that neither sovereign immunity nor the principles of federalism prevents a private person from raising, in defense and setoff, claims that arise from the same transaction or occurrence on which the state is seeking to recover damages.

■ A counterclaim must be "compulsory" in order to be raised as of right in an area of law in which the state is otherwise immune from suit. *See* Fed.R.Civ.P. 13(a) (a compulsory counterclaim is one that arises out of the same transaction or occurrence as the opposing party's claim); *see generally* 3 Moore & Freer, *supra,* ¶ 13.13 (discussing transaction or occurrence requirement of Rule 13(a)). Such a counterclaim is usually "within the court's ancillary jurisdiction and an independent basis for federal jurisdiction is not necessary." 6 Wright *et al., supra,* § 1409 at 49. However, ancillary jurisdiction [5] alone may not override the Eleventh Amendment. *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 251, 105 S.Ct. 1245, 1260, 84 L.Ed.2d 169 (1985) (noting the *Clark* exception to *Pennhurst* ); *Chemehuevi Indian Tribe v. California State Bd. of Equalization,* 757 F.2d 1047, 1053 (9th Cir.), *rev'd on other grounds,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985). In this case the University must bring its charges of patent infringement against Genentech or be forever barred from doing so. The University's immunity as to the patent counts having

---

5. The concepts of ancillary and pendent jurisdiction are now termed "supplemental jurisdiction". Judicial Improvements Act of 1990, Pub.L. No. 101–650, § 310, 104 Stat. 5089, 5113–14 (codified at 28 U.S.C. § 1367).

been abrogated, Genentech is now permitted to bring compulsory counterclaims that are suitable for recoupment of damages that may be assessed against it. Should the University choose to forego charging Genentech with infringement, these counterclaims would be subject to dismissal.

Although Genentech states that the University did not dispute that Genentech's antitrust and state law claims arose from the same transaction and events and thus are compulsory counterclaims, that is an overstatement. On the summary proceedings on which this case was decided, this question did not require decision by the district court. It is inappropriate for us to decide the issue *ab initio*, for neither the particular facts, nor the application of law to those facts, was developed in the district court. We hold only that on the basis of the pleading the dismissal of all of Genentech's antitrust and state law defenses and counterclaims was unwarranted under Rules 12(b)(1) and 12(b)(6). When proceedings are reopened the district court may determine which of Genentech's antitrust and state law counts meet the criteria of defenses and compulsory counterclaims to the University's charge of patent infringement, and thus are properly raised in this proceeding.

### 3. Antitrust Claims.

The district court held that the State Action doctrine provides immunity from the asserted violations of federal antitrust law. The principal antitrust issue raised in Genentech's pleading relates to the University's licensing activities. Genentech's position is that the University conspired with Lilly to exclude Genentech from the hGH market, in violation of the Sherman Act.

The State Action doctrine, although grounded on general principles of federalism, relates specifically to state sovereignty in state legislatively authorized activity. The doctrine provides immunity, or "exemption" as it is sometimes called, from federal competition laws when the state is performing official acts, whether or not these acts are anticompetitive in effect. As explained in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), a case where California

state officials were administering a legislatively-mandated program that had the purpose of restricting competition among raisin producers in California:

> We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature.

*Parker*, 317 U.S. at 350–51, 63 S.Ct. at 313–14. The district court, applying this principle, dismissed Genentech's antitrust claims against the University.

To warrant *Parker* immunity the anticompetitive acts must be taken in the state's "sovereign capacity", and not as a market participant in competition with commercial enterprise. *Community Communications Co. v. Boulder*, 455 U.S. 40, 52, 102 S.Ct. 835, 841, 70 L.Ed.2d 810 (1982). If the allegedly anticompetitive acts are not explicitly ordered by a legislative arm of state government, they must be conducted pursuant to legislative authorization that contemplates such acts. *Hoover v. Ronwin*, 466 U.S. 558, 567–68, 104 S.Ct. 1989, 1994–95, 80 L.Ed.2d 590 (1984). As discussed in *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), *Parker* immunity permits the state to impose anticompetitive restraints "as an act of government." 435 U.S. at 391, 98 S.Ct. at 1125 (quoting *Parker*).

However, the policies underlying *Parker* do not extend to circumstances where the state acts not in a legislative/regulatory capacity but as a "commercial participant in a given market." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, ——, 111 S.Ct. 1344, 1351, 113 L.Ed.2d 382 (1991). *See South–Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 102, 104 S.Ct. 2237, 2248, 81 L.Ed.2d 71 (1984) (Rehnquist, J., dissenting) ("the antitrust laws apply to a State only when it is acting as a market participant"); *Jefferson County Pharmaceutical Ass'n, Inc. v. Abbott Lab.*, 460 U.S. 150, 154, 103 S.Ct. 1011, 1015, 74 L.Ed.2d 882 (1983) (state university's participation in private retail markets renders it subject to Robinson–Patman Act); *Union Pacific R.R. v. United States*, 313 U.S. 450, 61 S.Ct. 1064, 85

L.Ed. 1453 (1941) (rebates and concessions made by city-run produce market integrated with railroad facilities violated the Elkins Act). *Cf. Reeves, Inc. v. Stake,* 447 U.S. 429, 436, 100 S.Ct. 2271, 2277, 65 L.Ed.2d 244 (1980) (the distinction between the state as a market participant and the state as a market regulator "makes good sense and sound law" in Commerce Clause cases); *Employees of Dep't of Public Health & Welfare v. Department of Public Health and Welfare,* 411 U.S. 279, 284, 93 S.Ct. 1614, 1617, 36 L.Ed.2d 251 (1973) (state activity was not of a proprietary, commercial nature, and was protected by principles of state sovereignty).

Genentech alleges that the University was not acting under state legislative or regulatory authority when the University assertedly violated the Sherman Act. Genentech states that the University has neither regulatory interest nor sovereign authority in the national market for hGH, and simply engaged in profit-making commercial activity. The University responds that it was merely exercising its authority and obligation to manage the property of the University. The University states that it does not participate in the hGH market; that it is not in competition with private enterprise; and that the licensing of a patent based on University research is not commercial activity but is part of a university's normal functions, serving the public purpose of aiding the movement of scientific research toward practical application.

 We need not decide whether the University's licensing activities establish a market participant exception to State Action immunity, for Genentech has not pled facts which if proved constitute violation of the antitrust laws. The patenting and licensing of the results of University research is not a violation of antitrust principles, and the grant of an exclusive license is a lawful incident of the right to exclude provided by the Patent Act. The University's right to select its licensees, the decision to grant exclusive or non-exclusive licenses or to sue for infringement, and the pursuit of optimum royalty income, are not of themselves acts in restraint of trade. Although Genentech presses the position that the University and Lilly conspired to exclude Genentech from the hGH market, Genentech's pleading does not allege more substance than the University's grant of an exclusive license to Lilly; thus it is unnecessary to consider the applicability of the statement in *City of Columbia* that there is no "conspiracy exception" to State Action immunity. 499 U.S. at ——, 111 S.Ct. at 1351.

For these reasons, the charge of antitrust violation in the licensing arrangement was correctly dismissed under Rule 12(b)(6). Accordingly, we do not reach the question of whether State Action immunity protects the challenged activities.[6]

### Summary

Dismissal of the declaratory action is vacated. Absent sound reason favoring a different forum, a first-filed suit is entitled to precedence against a subsequent suit.

The University is not immune from suit as to the patent counts, and as to those other counts that are defenses and compulsory counterclaims to the charge of patent infringement. Dismissal on these grounds is vacated. On remand the district court may determine which counts are thus properly asserted.

The dismissal of the antitrust count is affirmed.

No costs.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.

---

**6.** We take note that in *City of Columbia* the Court expressly left open the question of whether antitrust action may be brought against a state when there is no *Parker* immunity. We too do not reach that question.