BIOSITE, INC., Plaintiff,

v.

XOMA LTD., Xoma (US) LLC, Xoma Ireland Limited, and Xoma Corporation, Defendants.

Xoma Ltd., Xoma (Bermuda) Ltd., Xoma Ireland Ltd., and Xoma Technology Ltd., Plaintiff,

v.

Biosite, Inc., Defendant.

Nos. C–01–2251–PJH, C–01–2580–PJH.

United States District Court, N.D. California.

Sept. 25, 2001.

Kirk M. Hasson, Sharon L. O'Grady, Pillsbury Winthrop LLP, San Francisco, CA, for Biosite, Inc.

Charles A. Gilman, Matthew B. Lehr, Cooley Godward, LLP, Palo Alto, CA, for XOMA Ltd.

## ORDER RE: MOTIONS TO DISMISS

HAMILTON, District Judge.

Defendants' motions to dismiss the above-entitled related actions came on for hearing on September 12, 2001, before this court, the Honorable Phyllis J. Hamilton presiding. Biosite, Inc., appeared by its counsel Kirk M. Hasson and Sharon L. O'Grady, and XOMA Ltd., XOMA (Bermuda) Ltd., XOMA Ireland Ltd. and XOMA Corporation appeared by their counsel Charles A. Gilman and Matthew B. Lehr. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

Plaintiff Biosite Diagnostics, Inc. ("Biosite"), filed suit against defendants XOMA Ltd., XOMA (U.S.) LLC, XOMA Ireland Ltd., and XOMA Corporation ("XOMA"), seeking a declaratory judgment that it does not infringe XOMA's patents, and that the license agreements between Biosite and XOMA remain valid, and seeking injunctive relief barring XOMA from purporting to terminate the license agreements (Case No. C–01–2251 PJH—"the declaratory judgment action").

A month later, plaintiffs XOMA Ltd., XOMA (Bermuda) Ltd., XOMA Ireland Ltd., and XOMA Technology, Ltd. ("XOMA") filed suit against defendant Biosite, alleging patent infringement, fraud, breach of contract, misappropriation, and unfair business practices (Case No. C–01–2580 PJH—"the direct action").

Biosite is a biotech research company, which develops medical diagnostic tests. XOMA is a biopharmaceutical company whose primary business is the identification and development of novel therapeutic protein products, including the identification and development of antibodies for therapeutic purposes. XOMA is the owner of various patents relating to technology for methods of expression and secretion of antibodies in bacterial cells. In 1998 and 1999, various XOMA entities granted licenses to Biosite pursuant to three written license agreements (see below).

XOMA now moves for an order dismissing the complaint brought by Biosite (the declaratory judgment action). XOMA argues that 1) Biosite sought declaratory judgment only after being put on clear notice; 2) the direct action is the more appropriate vehicle to address the issues; and 3) Biosite's claims are defenses to the direct action.

Biosite opposes XOMA's motion on the basis that 1) Biosite's complaint was first filed; 2) the two parties in the actions are identical; 3) the issues in the two actions are the same; and 4) no valid purpose would be served by granting Xoma's motion.

Biosite seeks an order dismissing the complaint brought by XOMA (the direct action), or in the alternative, to dismiss or stay certain claims. Biosite argues that 1) the complaint is duplicative of Biosite's pending declaratory relief action, which is favored over XOMA's direct action since the declaratory relief action was filed first; 2) XOMA (Bermuda) and XOMA Technology Ltd. lack the requisite standing to sue; 3) the XOMA plaintiffs are not qualified to do business in California, and the state law claims are subject to abatement until plaintiffs comply with the requirements of California Corporations Code § 2105; and 4) the fraud claim should be dismissed because XOMA has failed to comply with the requirements of Federal Rule of Civil Procedure 9(b).

XOMA opposes Biosite's motion, arguing 1) Biosite's reliance on the first-to-file rule is misplaced and therefore the declaratory relief action is not favored over XOMA's direct action; 2) XOMA (Bermuda) has standing by way of assignment of 2 of the 3 licenses at issue, and XOMA Technology Ltd. has standing by way of assignment of ownership of each of the 5 patents at issue; 3) XOMA may properly bring state law claims since the basis of the Court's jurisdiction is the assertion of federal patent claims; · and 4) Biosite is on sufficient notice to defend itself against fraud claims.

## DISCUSSION

### A. XOMA's Motion to Dismiss

XOMA seeks an order dismissing the declaratory judgment action. At the hearing, both parties agreed that a single case is preferable to two cases in resolving their

dispute. Therefore, the court need only decide whether to proceed with the direct action or the declaratory judgment action.

Biosite argues that its declaratory judgment action was filed first and that the first-to-file rule dictates that XOMA's direct action should be dismissed. Additionally, Biosite argues that because XOMA's claims are compulsory counterclaims to the declaratory judgment action, dismissal of the direct action, rather than a stay, is appropriate. XOMA contends that Biosite's reliance on the first to file rule is misplaced and that its action sets forth the complete dispute between the parties.

■■■ The first-to-file rule provides that when identical suits are pending in two courts, the court in which the first suit was filed should generally proceed to judgment ... It is "not a rigid or inflexible rule to be mechanically applied." Rather, "[t]he most basic aspect of the first-to-file rule is that it is discretionary." "The decision and the discretion belong to the district court."
*St. Helena Wine Co. v. Allied Mgt., Inc.,* 1998 WL 480190, *1 (N.D.Cal.1998) (citations omitted); *see also In re Burley,* 738 F.2d 981, 988 (9th Cir.1984); *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995). Thus, it is clear that the first-to-file rule is applied at the discretion of the district court.

■ The first-to-file rule has been applied in cases where identical suits are pending in two courts. The purpose of the first-to-file rule is to prevent unnecessary interference with another court's action, to prevent a party from obtaining a change of tribunal or to prevent the anticipation of a defense that otherwise could be presented in the action brought before the first court. *See* 10B Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2758, p. 521.

For instance, the Federal Circuit has ruled that where an action seeking declar-atory judgment of non-infringement in one forum is filed before a direct action for infringement in a second forum, it is improper for a court to dismiss the declaratory judgment action absent "countervailing interests of justice or convenience." *Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 938 (Fed.Cir.1993); *see also Serco Services Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037 (Fed.Cir.1995). The Federal Circuit reasoned that this application of the first-to-file rule "avoid[s] creating opportunities for dispositive differences among the regional circuits." *Genentech,* 998 F.2d 931 at 937. Dismissing the declaratory judgment based solely on the filing of a direct infringement claim in another forum "would automatically grant the patentee the choice of forum, whether the patentee had sought—or sought to avoid—judicial resolution of the controversy." *Id.* at 937.

In its brief, Biosite relies heavily on *Genentech* and *Serco* to support its argument that the first-to-file rule applies unless other considerations require otherwise. However, the Federal Circuit's holding in these cases is not as broad as suggested by Biosite.

In both *Genentech* and *Serco,* parallel actions were filed in two different forums. The Federal Circuit did not state that the first-to-file rule is preferred where both the action seeking declaratory relief and the direct action are in the same forum. Rather, the court held that where an action for declaratory relief is filed before a direct action in another forum, a first-to-file determination is preferred in order to avoid "a general rule favoring patentee's choice of forum." *Serco,* 51 F.3d 1037 at 1039. Therefore, under the holdings of *Genentech* and *Serco,* a preference for the first-to-file rule is not required where the action seeking declaratory relief and the direct action are filed in the same forum

and, as is the case here, before the same judge.

More helpful to the present analysis than *Genentech* and *Serco* is the decision in *Oce–Office Systems, Inc., v. Eastman Kodak Co.,* 828 F.Supp. 37 (N.D.Ill.1993). In that case, Oce' filed a declaratory judgment action for invalidity and non-infringement of Kodak's patent in the U.S. District Court for the Northern District of Illinois. Seven and a half months later, Kodak filed a direct infringement action in the U.S. District Court for the Western District of New York. The declaratory judgment action was dismissed in favor of the New York action. However, after the dismissal, the New York action was subsequently transferred for improper venue to the Northern District of Illinois. The issue was whether the declaratory judgment action should be reinstated. The court denied the reinstatement of the declaratory judgment action.

In denying the reinstatement, the court stated that "no apparent hardship would result from refusing jurisdiction ... the only inconvenience to either party seems to be that plaintiff herein will become the defendant in the infringement action. We do not believe this is sufficient hardship to this plaintiff to require the court to retain jurisdiction in this declaratory judgment action because Oce' can easily assert its claims as defenses or counterclaims in the infringement action." *Id.* at 39. In addition, the court stated that "we believe that an infringement action is the better vehicle through which to resolve the issues in this case because it is an affirmative action seeking coercive relief whereas a declaratory relief action is equitable in nature." *Id.*

The court's analysis in *Oce–Office* is applicable to the present action. The only apparent inconvenience to Biosite in dismissing the declaratory relief action is that it will become a defendant in the direct action filed by XOMA. The direct action provides a more intuitive format where the patentee is the plaintiff and the assignee is the defendant, which is less confusing for the court and jury. In addition, the direct action includes more claims than the declaratory judgment action, which seeks resolution of only the patent infringement and breach of contract disputes.

Biosite argues that XOMA's claims of fraud/misrepresentation, misappropriation and unfair business practices are compulsory counterclaims to the declaratory judgment action and, thus, the declaratory judgment action will dispose of all the issues present in the direct action. However, whether these claims would be considered compulsory and barred in future actions is far from clear. Indeed, the phrase "transaction or occurrence" may be construed "more narrowly where the question is whether the defendant who failed to plead a counterclaim is barred from suing upon it later." William W. Schwarzer, A. Wallace Tashima and James M. Wagstaffe, *Federal Civil Procedure Before Trial,* § 8:269 (The Rutter Group 2001) (citing *Hydranautics v. Filmtec,* 70 F.3d 533 (9th Cir.1995)). In addition, Biosite has not presented any compelling arguments that these claims would be considered compulsory. Rather, Biosite merely makes the conclusory allegation that there is "little question" that the claims asserted in XOMA's complaint arise out of the same transactions and occurrences. Therefore, the direct action ensures that all the issues will be resolved whereas it is not clear whether the action for declaratory judgment will dispose of all the issues.

For the above reasons, the court concludes that the direct action is the better vehicle with which to dispose of the disputes. Accordingly, XOMA's motion to

dismiss the case No. C–01–2251–PJH is GRANTED.

## B. Biosite's Motion to Dismiss

### 1. Standing of XOMA Bermuda and XOMA Technology Ltd.

Biosite argues that XOMA Bermuda and XOMA Technology Ltd. are wholly-owned subsidiaries of XOMA, Ltd., and are not parties to the license agreements, *are not* owners of the patents at issue and thus, have no standing to bring this action.

XOMA contends that XOMA Bermuda is a party, by way of assignment of 2 of the 3 licenses at issue. XOMA also asserts that XOMA Technology is an owner, by way of assignment, of each of the 5 patents at issue. XOMA supports these contentions with a declaration by Christopher J. Margolin, the President, General Counsel, and Secretary of XOMA Ltd. and affiliates.

Biosite responds that plaintiff XOMA should have stated facts in the complaint showing that "each of the plaintiffs owns the claims it asserts." Biosite argues that the blanket assertion of all claims on behalf of all plaintiffs is inconsistent with the claims in the Margolin declaration, and that most of the claims in XOMA's complaint are asserted by parties who lack standing. For example, Biosite contends that only XOMA Ireland has standing to assert the claim for breach of the December 1999 agreement, and only XOMA (Bermuda) has standing to assert the claim for breach of the September 1998 and December 1998 agreements; that only XOMA Technology, as the sole assignee of all the patents at issue, has standing to assert the patent infringement claims; and that XOMA Technology and XOMA (Bermuda) lack standing to assert the fraud claims because XOMA never disclosed to Biosite that any interests in the patents or the licenses had been transferred to those two XOMA entities.

XOMA argues that XOMA (Bermuda) and XOMA Technology are wholly-owned subsidiaries of XOMA Ltd, which is, in turn, the successor to XOMA Corporation. XOMA contends that its allegation in the complaint that "Plaintiffs (collectively 'XOMA') are party to the three license agreements breached by Biosite" is sufficient to establish standing.

To establish a "case or controversy" within the meaning of Article III, a plaintiff must show, at a minimum, injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing generally requires that a plaintiff has suffered an actual loss, damage, or injury, or is threatened with impairment of his or her own interests—in other words, a plaintiff must have a sufficient stake in the outcome of the suit to make it a real "case or controversy." *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

In this case, XOMA Ltd. appears to have standing to assert all the claims because it has a direct pecuniary interest in the licenses and in the patents. It is not clear, however, which claims the two wholly-owned subsidiaries (XOMA Technology and XOMA Bermuda) can assert. Therefore, XOMA shall amend the complaint to clarify which plaintiff is bringing which claim.

### 2. XOMA's Qualification to Do Business in California

Biosite argues that XOMA's state law claims should be dismissed because the XOMA plaintiffs are disabled from asserting these claims by reason of their failure to obtain a certificate of qualification.

There is compelling support for XOMA's argument that its state law claims can be

maintained in federal court because this case is not based on diversity jurisdiction. *See* 3B Moore, *Federal Practice,* §§ 17.26 (3d ed.1988) ("forum state restrictions, however, do not apply to claims arising under federal law"); *see also* Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1561 (3d ed. 1998) ("Of course, if subject matter jurisdiction is not based in diversity of citizenship, the federal court need not apply forum state restrictions on a corporation's ability to sue"); *Viva, Ltd. v. United States,* 490 F.Supp. 1002, 1007 ("where the right asserted is instead federally created, the Woods rule does not apply and the (state) statute does not operate to bar such an action") (citing *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Lyon v. Quality Courts United,* 249 F.2d 790 (6th Cir.1957)).

Since the direct action is not based on diversity, the state law claims need not be dismissed.

### 3. Fraud Claim

■ Biosite argues that the complaint fails to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). Biosite relies on *In re GlenFed Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (en banc) for the proposition that a plaintiff alleging fraud is required to plead the time, place, and nature of the alleged fraudulent activities, as well as specifying the affirmative misrepresentations and/or material omissions. Biosite also argues that the claim is deficient because XOMA does not allege the existence of a confidential relationship between Biosite and XOMA.

XOMA responds that a confidential relationship is implied by virtue of the licensing agreements between Biosite and XOMA, and asserts that the complaint does allege fraud with particularity, citing ¶¶ 31–33, 36–41, 59–61, and ¶¶ 45, 51–55, 57, and 62–66. In the reply, Biosite simply reiterates that XOMA fails to allege a confidential relationship, and generally fails to comply with Rule 9(b).

Most of the paragraphs of the complaint cited by XOMA do not allege fraud with particularity. The problem is that ¶¶ 7–69 allege all the facts and the causes of action follow separately. The "facts" section identifies some actions as fraudulent, but the components of the fraud claim are not clear. For example, ¶ 31 alleges that Biosite "sought to leverage the commercial opportunities which arise out of its practice of antibody phage display generally and its development of polyvalent antibody phage display specifically," and that "[i]n doing so, Biosite concealed and failed to disclose to XOMA and to others that Biosite used, without permission, the XOMA Expression Technology as critical elements . . . ." Paragraph 32 makes similar allegations with regard to another technology created by Biosite.

Paragraph 33 alleges that Biosite's rights to use XOMA technology "were obtained by fraud." Paragraph 38 alleges that during an April 15, 1998 meeting between Biosite representatives and XOMA representatives, Biosite "misrepresented its intended use of any license from XOMA," representing that it was "not interested in any license from XOMA to be used for the commercial production of therapeutic antibodies," and that it wanted access to XOMA's Expression Technology simply for the purpose of taking antibodies that Biosite had discovered and producing them in sufficient quantities to make reagents for commercial diagnostic products. The paragraph concludes, "Biosite's statements to XOMA were knowingly false."

Following the "Facts" section are the nine causes of action (one for fraud, three

for breach, three for patent infringement, one for misappropriation, and one for unfair business practices). Count 1—Fraud/Misrepresentation—alleges as follows:

> Having been made aware of the existence and significance of the XOMA patent estate relating to XOMA Expression Technology, including the existence of pending applications directed to the expression and secretion of functional antibodies in bacteria, commencing in the Spring of 1998, Biosite sought and obtained the right to practice that technology by fraud, misleading silence and incomplete representations of fact which, in context, were misleading.

> XOMA reasonably relied on Biosite's false and misleading statements and has been directly and proximately injured thereby.

Complaint ¶¶ 71–72.

Basically, XOMA appears to be alleging that Biosite told XOMA it wanted the licenses for one purpose, when in fact it wanted them for another purpose, related to commercial development—and that Biosite knew that XOMA would not grant the licenses for the purpose that Biosite secretly intended.

The court agrees with Biosite that the allegations of fraud lack the particularity required by Rule 9. Given the length and relative complexity of the complaint, XOMA shall amend it to specifically allege, in a separate section, the "who, what, when, and where" that constitute the fraud, even if allegations appearing in the "Facts" section of the complaint must be repeated.

## CONCLUSION

In accordance with the foregoing, the court hereby rules as follows:

1. Defendant XOMA's motion to dismiss the complaint in case No. C–01–2251 is GRANTED with prejudice.

2. Defendant Biosite's motion to dismiss the complaint in case No. C–01–2580 is GRANTED IN PART and DENIED IN PART. The motion to dismiss the state law claims is DENIED. The motion to dismiss XOMA (Bermuda) and XOMA Technology Ltd. due to lack of the requisite standing to sue is GRANTED with leave to amend to clarify the claims of XOMA (Bermuda) and XOMA Technology Ltd. The motion to dismiss the fraud claim is GRANTED with leave to amend to plead fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b). The amended complaint shall be filed by October 15, 2001. Biosite shall file a responsive pleading including any counterclaims by November 7, 2001.

This order fully adjudicates the motion listed at No. 37 of the clerk's docket for case No. C–01–2251 PJH and terminates case No. C–01–2251 PJH and any pending motions. The clerk shall close the file for case No. C–01–2251 PJH.

This order fully adjudicates the motion listed at No. 6 of the clerk's docket for case No. C–01–2580 PJH.

**IT IS SO ORDERED.**